(No. 22803.—
The People of the State of Illinois, Defendant in Error, *vs.* Thomas Fitzpatrick *et al.* Plaintiffs in Error.

*Opinion filed February 21, 1935.*

RISKIND & RISKIND, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE HERRICK delivered the opinion of the court:

Thomas Fitzpatrick, Edward Oenning and Joseph Kennedy (hereinafter called the defendants) were indicted in the criminal court of Cook county for the burning of a building in the city of Chicago. The indictment contained six counts, the first three of which were for arson and the last three for maliciously injuring and defacing a building. The last three counts were waived, the State's attorney agreeing in open court, during the trial, not to prosecute thereon. A jury trial resulted in a verdict finding the three accused persons guilty of arson. They were sentenced to the penitentiary for an indeterminate term of years. To reverse the judgment they have sued out this writ of error.

The building alleged to have been burned consisted of a two-story frame building with an addition, known as

3300 and 3300½ Southport avenue. On the first floor were two rooms, the one in the main building being vacant and the one in the addition being occupied by a milk dealer. There were apartments on the second floor of the main building occupied by the owner and two tenants. On the morning of February 20, 1934, a son of the owner discovered fire and called his mother, the owner, who was then eighty-nine years of age. She fainted and was removed from the building. In response to a still alarm at about 12:07 o'clock of that morning the chief of one of the battalions of the fire department of the city of Chicago went to the above number and discovered that oil or gasoline had been thrown on the walls and a fire had started in the addition at 3300½ Southport avenue. The fire was between the walls and had traveled upward and across to the building numbered 3300. Firemen went to the second floor, opened the wall and ceiling and found the fire had worked through to the attic. As the fire traveled there was a flickering caused by the volatile fluid burning, and the odor and smoke were different from the odor and smoke made by an ordinary fire. About two hours were required to extinguish the fire.

Henry Hauert was a milk dealer whose place of business was in the addition to the main building. He testified that he had been selling milk for seven cents a quart while the regular price was ten cents a quart. About February 11 Oenning came to Hauert's store and asked him why he did not buy out another dealer instead of starting up for himself. He replied that it was cheaper to start his own business. Oenning asked him if he had a city license, and upon the witness' reply in the negative Oenning said, "You better get it." The witness obtained a license on the following Monday and nothing further was said by Oenning to the witness. The witness never saw Oenning after such conversation until subsequent to the fire. On February 19, or the early morning of February 20, the witness

was in his apartment, in bed, when he was aroused by the fire department and discovered that the store was burning. He had then been in business about eleven days.

The proprietor of a tavern on Southport avenue testified that he had seen Kennedy about twice, Oenning five or six times and Fitzpatrick about the same number of times. The three men were in the milk business with one of the large companies in Chicago. On the night of February 19, 1934, the three men mentioned were in the tavern between 7:00 and 8:00 o'clock. The proprietor served them drinks. One of them, who the witness thought was Kennedy, asked for a pail. The three men left with the pail a little after 11:00 o'clock. The witness stated that he heard the fire department's wagons or engine go by, and that the three men were in his tavern again about half an hour later, and that it was a little after 12:00 o'clock when they came in. They then had one drink of whisky and one drink of beer and departed. The witness afterwards saw a pail in the State's attorney's office. The pail was bent and looked as if it had been run over. It resembled the one he had kept under the sink in the tavern.

An attendant at a filling station on duty on the night of February 19, 1934, testified that Fitzpatrick drove into the station between 10:00 and 11:00 o'clock with an Oldsmobile four-door sedan, nearly new. The witness' attention was attracted to the fact that the lights of the automobile were not burning either coming in or going away. He at the time wrote the license-plate number on a piece of paper, which he stated he threw away the next day. Fitzpatrick had a pail with him for the purpose of obtaining gasoline. The witness attempted to persuade him to take a red can which the company had for sale. Fitzpatrick said he had just run out of gasoline and he did not wish to return to the station. The witness sold him one gallon of gasoline, and because it did not fill the pail which Fitzpatrick had brought the latter asked for a second gallon.

The witness was unable to describe Fitzpatrick's clothing, but remembered that the last figures of his automobile license were 811.

A minister who conducted a spiritual mission but temporarily was working at the tavern as a porter, testified that on the night of February 19, 1934, he went to a wake with his wife and another woman, returning south on Southport avenue to his home about midnight. Fitzpatrick and Oenning had been at the tavern previously and witness had seen them there on prior occasions. On the night of the fire the three defendants drove south on Southport avenue, turned west on a cross-street and parked ten or fifteen feet from the corner. The witness saw the three men later that night. One of them had a bucket of gasoline and another had a bottle. They passed within four feet of the witness and he recognized them as the defendants. A crash of glass at the milk store drew the witness' attention in that direction. He saw the three men huddled in front of the place where the fire occurred and he saw flames after the crash. The three men then ran to the automobile. One of them fell. Kennedy was on the running-board of the automobile as it departed. The witness saw a bucket at the scene of the fire similar to the one he used for washing windows at the tavern. He afterward looked for the bucket at the tavern but could not find it. The license number of the automobile in which the defendants rode as they disappeared was 647-811. At a show-up the witness identified Oenning and Fitzpatrick.

The wife of the last previous witness corroborated most of her husband's testimony. She identified Kennedy as one of the men. One of them carried a bottle. She saw the three men stop in front of the store and heard a crash of glass. She stated that as the trio went to the automobile all three fell on the ice, after which two of them got in the automobile and one stood on the running-board. She described the automobile as a new closed car, dark colored,

with a stripe on it, with aluminum disc wheels and having short spokes.

The attorney for the Chicago fire department testified that on the night of the fire, between 11:30 and 12:00 o'clock, he was bowling at a bowling alley about a half block north of 3300 Southport avenue. He went outside at about 11:45 and saw a fire at 3300½ Southport avenue, which was about seventy yards south of where he had been bowling. A store window was broken. There was snow on the ground and flames were coming up from the snow on the sidewalk. There was a pail, bent in from the handles, on the sidewalk. The pail was burning. The minister heretofore referred to gave the witness the minister's card, with the license number of the automobile, 647-811, written on it. The witness had called the fire department. He, a driver from the fire department, another man with whom he had been bowling, and two policemen, went together to the home of Oenning at about 2:00 o'clock that same morning and found him in bed. Oenning, at the request of the witness and the police officers, went with them to his garage in the rear of his home. When the door was opened the witness discovered that the garage was charged with gasoline fumes. An examination was made of the Oldsmobile in the garage. The radiator was still warm and the car bore license-plate number 647-811. Oenning was placed under arrest. He denied being present at the fire. The witness took a mat, which was saturated with gasoline, from the floor of the automobile. The mat was produced at the trial but did not present the same condition of saturation with gasoline as when first found. A bucket was shown the witness at the trial, and he testified that it was the same one that was burning in front of the building when he first went there, and that it was not then in the same condition as previously, for he had straightened it out. An odor from the bucket at the place of the fire was one of gasoline.

The driver for the fire department corroborated the testimony of the attorney for that department as to their presence at Oenning's garage, the finding of the automobile with its radiator still warm, and the rug or mat, which had a burn in it and was saturated with gasoline. Oenning, the rug and the pail were taken to the police station. The witness described the automobile as a 1933 Oldsmobile coach, blue-black in color, with silver-type wheels, and the license number as 647-811.

The man who had been bowling with the attorney for the fire department also offered corroborative testimony. He saw the pail at the place of the fire. When he went with the police officers, the fire department's attorney and the driver for the fire department to Oenning's garage he noticed the odor of gasoline there. An Oldsmobile, with the license number 647-811, was there and the motor was warm. The windows of the automobile were open and the rug or carpet in the rear was saturated with gasoline.

The two police officers who went to Oenning's garage both testified. Both of them saw that one of Oenning's hands was burned and his hair singed. One of the officers testified that Oenning's eyelashes were singed and the hair on the side of his head was burned. Oenning admitted to him the burning of a milk store at 3300½ Southport avenue. The bucket and rug were introduced in evidence.

On behalf of the defense Edward J. Oenning testified that he was a milkman. The territory where he peddled milk was about a mile from the scene of the fire. He denied talking with anyone owning a milk dairy at 3300 Southport avenue. On the night of February 19 he finished his work late on account of weather conditions. Kennedy and Fitzpatrick finished about the same time. The three men afterward went to the tavern heretofore mentioned. At about ten minutes to 12:00 o'clock Kennedy asked the witness to take him home. He did so and then had another drink at the tavern and went to his own home. He was

arrested at about 1:15 or 1:30 o'clock. He admitted that police officers examined his automobile and that one of them said the motor was warm. The witness felt the motor and found that it was cool or lukewarm. He did not see anyone remove a rug from the automobile. A police officer asked the witness to go to the scene of the fire, and the latter asked, What fire? The officer told the witness that he knew, but the latter replied that he did not know of a fire. He was ordered to drive the automobile to the place of the fire, and when he again said that he did not know where the fire was, the police officer directed him to drive on Southport avenue. When he was at the police station he was asked to tell what he knew about the fire, and when he said he knew nothing about it he says a police officer struck him in the face. He testified that the minister was brought to the police station, and the latter said that he could only partially identify him—that he re- marked "he looks something like the fellow." The wit- ness admitted that the license number of his automobile is 647-811. He denied that he was at the fire. He did not smell the odor of gasoline in his garage.

Thomas E. Fitzpatrick testified that on the night of February 19, after finishing his work, he, Kennedy and Oenning went to the tavern and had several drinks and remained there until near midnight. Oenning, in company with Kennedy, drove him to his home, about a half mile from 3300 Southport avenue. The witness got out of the automobile, went up-stairs to his room, retired, and did not leave his home that night. He was arrested the following night.

Joseph Kennedy testified that he was a milkman and that his territory was not near 3300 Southport avenue. He never saw the owner of the milk store at the street num- ber in question. After he finished work on the night of February 19 he met Oenning and Fitzpatrick, and they went to the tavern and had some drinks, shook dice and

left for home about 12:00 o'clock. Fitzpatrick was left at his home, and he and Oenning then stopped at the tavern and had another drink, and Oenning drove the witness home at about 12:20 o'clock. Oenning's automobile was parked in front of the tavern on Southport avenue from 7:00 o'clock until 12:00 o'clock. He did not know that there was a cut-price milk store at 3300 Southport avenue. He denied that he asked for a bucket at the tavern, and he did not hear anything of the fire.

On rebuttal, a credit man for the milk company employing Oenning testified that the latter was not on duty on Monday, February 19, 1934, but that was his day off. The police officer who Oenning testified struck him was re-called and denied striking Oenning.

It is contended that there was error in permitting the two exhibits to be introduced in evidence, and that the evidence that Oenning's hair was singed and his hand burned was improper without making proof that such condition was the result of setting the fire in question. Complaint is also made of inflammatory remarks in the argument of the assistant State's attorney.

With respect to the admissibility of the exhibits, it is argued that it is not sufficient to show that the pail found at the place of the fire was similar to one kept at the tavern but more definite evidence was required that it was one and the same utensil, and that it was not shown the rug was connected with the fire. The evidence was circumstantial, and it has been held that where that is so and there is no evidence in the record connecting the accused with the crime charged, exhibits found at the scene of the crime or in the neighborhood of the home of the accused are not admissible in evidence. (*People* v. *Fontana,* 356 Ill. 461; *People* v. *Evertson,* 310 id. 397.) These cases are cited by defendants' counsel in support of their contention, but the facts in both cases render them inapplicable to the present case. Here there was an abundance of closely connected

circumstances having some tendency to show the possession of the pail by the defendants at the time of the commission of the crime. The pail was clearly admissible. *People* v. *Lenhardt,* 340 Ill. 538; *People* v. *McGuirk,* 312 id. 257; *People* v. *Foster,* 288 id. 371.

The rug had lost its odor of gasoline, it was not shown to have been out of the automobile at the time of the fire, and there was no evidence how it became burned. The rug was not of much probative force, but its admission in evidence could not have been prejudicial in view of all the testimony.

What has been said with reference to the introduction of the pail in evidence applies with equal force to the objection that there was no proper proof that the burned condition of Oenning's hand and the singed state of his hair were results of setting the fire in question.

During the argument of one of the assistant State's attorneys he stated that it was only by the grace of God that the defendants were not indicted for murder, and that it was only because some person removed the owner of the building, a woman eighty-nine years of age, and thereby prevented her death. Objections to the remarks were made and sustained. In view of the fact that the trial judge promptly sustained the objection to the statement, and that the facts as shown by the record here tend strongly to establish, beyond a reasonable doubt, the guilt of the defendants, our holding is that the making of such statement in the instant case does not require the reversal of the judgment. *People* v. *Hunter,* 329 Ill. 186; *People* v. *Barnard,* 327 id. 305.

The assistant State's attorney further remarked that one of the police officers said to Oenning, "Where did you get those scars?" and that he answered, "I got them when we touched off the milk store." Upon objection of counsel for the defendants the court struck out the statement. The assistant State's attorney said, "Oh, he said that, your

honor." Another assistant State's attorney participating in the trial said, "Certainly he said that, your honor." The court instructed the jury to disregard the remarks. Even though the jury was instructed to disregard the remarks of the assistant State's attorneys it was entitled to consider the testimony of the police officer, which on such subject was similar to what an assistant State's attorney stated in his argument.

Lastly, it is urged that the evidence is not sufficient to convict the defendants, and that the People failed to prove that the crime of arson was committed or the identity of those accused. Frequently the facts and circumstances from which the *corpus delicti* is proved are those which connect the accused with the commission of the offense. (*People* v. *Wolf,* 334 Ill. 218; *People* v. *Callahan,* 324 id. 101.) The identity of the accused may be established by circumstantial evidence. (*People* v. *Sapp,* 282 Ill. 51.) We have heretofore stated the substance of the evidence for the People. If credible it was sufficient to establish the *corpus delicti,* the identify of the defendants and their commission of the crime charged. The evidence was not of that unsatisfactory character which would permit this court's interference with the verdict. The law has committed to the jury the determination of the credibility of the witnesses and of the weight to be accorded their testimony, and where the evidence is merely conflicting this court will not substitute its judgment for that of the jury. *People* v. *Kubish,* 357 Ill. 531; *People* v. *Mangano,* 356 id. 178; *People* v. *Fortino,* 356 id. 415.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*