## STATE OF MAINE

*vs.*

## JAMES E. HAMILTON

Androscoggin.   Opinion, September 10, 1953.

*Edward J. Beauchamp, County Attorney,* for State.

*Berman & Berman,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ. MURRAY, A. R. J.

TIRRELL, J. On exceptions and appeal. The respondent was indicted for manslaughter. It is claimed by the State that one Carl C. Berry was killed by the criminal negligence of the respondent in the operation of a motor vehicle on a public highway while under the influence of intoxicating liquor.

The prosecution stems from an automobile accident which occurred on December 24, 1951 at Danville, in the City of Auburn. An automobile in which Carl C. Berry, deceased, was riding, in order to avoid an impending collision with the respondent's truck, swerved off the road and crashed, killing the deceased. At the time in question the respondent was a truck driver employed by J. E. Faltin Transportation Company, of Portland. He had been a truck driver for the past twenty years and had been employed by the Faltin Company for a period of eight months prior to the accident. His regular route was from Portland to Lewiston and Au-

burn, stopping in Lewiston and Auburn for pickups and deliveries, and returning to Portland in the evening. The tractor-trailer which he was driving was equipped with pneumatic tires and was registered for a gross weight of 50,000 pounds.

On the day in question, December 24, 1951, the day before Christmas, the respondent, following his usual routine, came to Lewiston and Auburn, driving a Mack trailer truck loaded with merchandise for delivery at various points in Lewiston and Auburn. He made various stops for delivery, and about 1 o'clock in the afternoon he came to the National Tobacco & Candy Company, a wholesale concern on Park Street in Lewiston. It being the day before Christmas, the concern had whiskey available for its customers and employees, as was its custom. The respondent was offered a drink of whiskey at this time and accepted one. Later in the afternoon, shortly after 3 o'clock, the respondent returned to the National Tobacco & Candy Company and had two additional drinks of whiskey. The drinks were from an ounce to an ounce and a half each of whiskey. The respondent admitted on direct examination taking the three drinks of whiskey as specified. From the National Tobacco & Candy Company the respondent went to Roy Brothers Trucking Terminal in Lewiston. A witness employed by Roy Brothers testified that his observation of the respondent at that time was that the man had probably had a few drinks.

At approximately 5 o'clock the respondent was driving his truck on Lincoln Street in Lewiston northerly toward Main Street on his way back to Portland. His route as described by various witnesses for the State who encountered him at various stages of his journey was Lincoln Street northerly to Main Street, westerly on Main Street in the direction of Auburn. At about 5:10 o'clock a witness for the State testified he observed a Faltin tractor-trailer

double-parked on Spring Street in Auburn, headed north toward Court Street, and as he observed it a man came out of a house at 87 Spring Street, stumbled on the front step of the house against a picket fence, fell to his knees, arose, and then walked to the truck. The driver of the truck, who was not identified by the witness, drove the truck northerly toward Court Street and turned left on Court Street toward Minot Avenue.

The Portland Manager of the J. E. Faltin Transportation Company and other witnesses testified that the company operated five trucks in Maine on December 24, 1951, and four of these trucks, other than that driven by the respondent, were present and accounted for in Portland on that day between 4:30 and 5 o'clock; hence, at the time in question there was only one Faltin truck not accounted for at the home office. This truck was being operated by the respondent in Lewiston and Auburn at that time.

A witness for the State further testified that his car was stopped at a traffic light at the corner of Court and Spring Streets in Auburn, headed easterly, and that as he waited for the light to change, the respondent, driving a Faltin trailer-tractor, came out of Spring Street and turned onto Court Street. As the respondent did so, the truck brushed the rear left portion of the witness' vehicle.

At approximately 5:10 the respondent was in collision, at the Grand Trunk Railroad crossing on Route 100, — on the Portland Road, — with a vehicle coming from the direction of Portland. The collision occurred on the respondent's left side of the road. The driver of the other vehicle turned and followed the respondent's vehicle at varying intervals to the scene of the accident. The respondent at that time was driving at about 55 miles an hour. This collision at the railroad crossing was observed by another witness for the State, who also followed the respondent's vehicle on Route

100 to the scene of the accident. This witness further testified that as he was following the truck he was driving at a speed of 55 miles per hour and that the respondent's truck was pulling away from him. At various points on the route to the scene of the accident, the respondent was observed operating his vehicle on the left hand side of the road and came close to cars coming from the opposite direction.

At the Oakdale Bridge, so-called, the respondent swerved sharply to his left as he came off the bridge toward an oncoming vehicle operated by a State trooper. The State trooper swerved sharply to his right to avoid being hit, then turned around and followed the respondent to the scene of the accident. The State trooper was driving his car at about 60 miles an hour in an attempt to catch up with the respondent.

The scene of the accident was a curve in the road just northerly of the railroad overpass in Danville. The visibility is unobstructed from the point of impact for a distance of some hundreds of feet northerly toward Auburn. At the time of the accident the main travelled portion of the highway was free from ice, although there was some ice at the outside edges of the shoulder. The road was dry and in good condition. The respondent testified that as he came to the curve and to the scene of the accident he was traveling in the center of the road and the truck pulled to the left.

As the respondent approached the scene of the accident, a car driven by a Mr. Anten, and containing the deceased, was approaching from the opposite direction. The truck at that time was coming down on the left side of the road. In order to avoid the truck the driver of the approaching car turned sharply to the opposite side of the road and crashed into the ditch. As a result of this crash the decedent was killed. Immediately behind the Anten car and coming from

the same direction was another vehicle operated by a Mr. Pinette. This vehicle was in actual collision with the respondent's truck.

As a result of the collision the respondent was pinned under the left rear wheels of the tractor and remained there until he was extricated.

The respondent attributed the truck's being on the left hand side of the road to defective steering mechanism and defective braking. He was aware of these defects on the morning of December 24th, but made no effort to have them remedied.

There were no signs of brake marks on the highway along the path of respondent's truck prior to the point of impact. Two police officers testified after the accident that they smelled a strong odor of liquor.

The respondent was badly injured as a result of the accident and was taken to the hospital immediately thereafter. Three doctors who observed respondent at the hospital during emergency treatment testified that, in their opinion, respondent was under the influence of intoxicating liquor.

The case is before this court on exceptions and by appeal from the ruling of the Presiding Justice denying the motion of the respondent for a new trial.

The respondent's Bill of Exceptions contains seven distinct exceptions which we will consider in order as they appear in the bill.

## EXCEPTION No. 1

Simone Dumond, a witness called by the State, testified that she entered the cab of the truck operated by the re-

spondent, and sat in the passenger's seat while the truck proceeded northerly a short distance to Main Street, where she alighted.

Under interrogation by the County Attorney, she testified as follows:

Q. Could you see Mr. Hamilton's face from where you were sitting in the cab?

A. Yes.

Q. Do you remember the color of his face?

A. Same color he has got now.

Q. Did you notice his eyes at all? Was there anything that you noticed about his eyes, if anything?

A. Well, his eyes were just like he had been drinking.

MR. BERMAN. I didn't get that.

A. Like he had been drinking.

MR. BERMAN. May that be stricken out?

Q. I don't see how it could—observation that even a child could make, Bro. Berman.

MR. BERMAN. May it be stricken out?

The Court. No.

MR. BERMAN. Your Honor reserve my exception?

THE COURT. Yes.

At the conclusion of all of the evidence and in the presence of the jury the Presiding Justice addressed the jury as follows:

> "Mr. Foreman and members of the Panel:
> A witness named Simone Dumond testified in this trial and on several occasions or in several instances she testified that the respondent was under the influence or was intoxicated. You will remember what she said. You will disregard that testimony. Consideration of her testimony reveals to me that she did not give any reasonable basis for drawing a conclusion, so you will not consider her testimony in those respects; and her testimony has been stricken in reference to her opinions or judgments."

The respondent claims this testimony was inadmissible and that the respondent was prejudiced when it was not stricken immediately upon his motion. The respondent further argues that if the motion had been granted when first made and the evidence then stricken, then when the State rested there would be no evidence for the jury to consider on the question of the respondent's intoxication, and a directed verdict would have been required.

The witness without objection testified as follows:

> A. Well, I got in the truck and he didn't speak very much. Well, seemed as if he had something to drink. Seems as if he had something to drink.

At the request of the respondent's attorney this answer was read by the reporter and no objection was then made nor any motion to strike the answer from the record.

The record further discloses testimony of this same witness:

Q. When you first got into the truck after you made your observation about his having something to drink, did you smell anything?

A. I didn't pay attention.

Q. You didn't pay attention?

A. I didn't pay attention.

Q. Did you say anything to him about —

A. Well, I asked him if he was feeling good —

Q. Yes?

A. But he didn't answer.

Q. As a result of that observation didn't you tell him something?

A. Well, I told him, I said, "Be careful going to Portland."

Q. Is that all you told him?

A. Well, he didn't say — I said nothing and he said nothing.

Again on direct examination the record reveals:

THE COURT: You may ask the lady if she made observations, yes.

Q. That is correct.

A. If I noticed something about him, you mean? Well, I thought he was drunk.

As stated in the case of *Holton* v. *Boston Elevated Ry. Co.*, 21 N. E. (2nd) (Mass.) 251:

"Liquor affects individuals in various ways and it is sometimes difficult to determine degrees of intoxication. 'Whatever difficulties there may be in framing with precision a definition of the extent of inebriety which falls short of and which constitutes drunkenness, there is a distinction between that crime on the one hand and merely being under the influence of liquor on the other hand, which is recognized in common speech, in ordinary experience, and in judicial decisions.' *Cutter* v. *Cooper*, 234 Mass. 307, 317, 318 125 N.E. 634, 637; *Commonwealth* v. *Hughes*, 133 Mass. 496; *Commonwealth* v. *Lyseth*, 250 Mass. 555, 146 N.E. 18. But the manifestations of intoxication may present different aspects. While it might not be easy accurately to describe each and every minute detail indicative of intoxication, yet the principal objective symptoms are so well known that witnesses have always been permitted to express their opinion as to the inebriety of a person. *Edwards* v. *Worcester*, 172 Mass. 104, 51 N.E. 447; *Gorham* v. *Moor*, 197 Mass. 522, 524, 84 N.E. 436."

Also in *The People* v. *Eastwood*, 14 New York 562, at 566, 567, the court stated:

". . . . . A child six years old may answer whether a man (whom it has seen) was drunk or sober; it does not require science or opinion to answer the question, but observation merely; but the child could not, probably, describe the conduct of the man, so that, from its description, others could decide the question. Whether a person is drunk or sober, or how far he was affected by intoxication, is better determined by the direct answer of those who have seen him than by their description of his conduct. Many persons cannot describe particulars; if their testimony were excluded, great injustice would frequently ensue. The parties who rely on their testimony will still suffer an inconvenience, for court and the jury are always most impressed by those witnesses who can draw and act a living picture before them of what they have

seen, so that if there is any controversy as to the fact, such witnesses control; if there is no controversy as to it, the general testimony answers all useful purposes."

Further, in *Commonwealth* v. *William E. Sturtivant,* 117 Mass. 122, at 133:

"The exception to the general rule that witnesses cannot give opinions, is not confined to the evidence of experts testifying on subjects requiring special knowledge, skill or learning; but includes the evidence of common observers, testifying to the results of their observation made at the time in regard to common appearances or facts, and a condition of things which cannot be reproduced and made palpable to a jury. Such evidence has been said to be competent from necessity, on the same ground as the testimony of experts, as the only method of proving certain facts essential to the proper administration of justice. Nor is it a mere opinion which is thus given by a witness, but a conclusion of fact to which his judgment, observation, and common knowledge has led him in regard to a subject matter which requires no special learning or experiment, but which is within the knowledge of men in general."

"A witness may state his conclusions as to the sobriety or inebriety of another." (C.J.S., Vol. 32, p. 183, sec. 508).

The Presiding Justice, notwithstanding the fact that the statement by the witness as to the sobriety of the respondent was admissible and proper, in order to preserve the utmost impartiality and to guarantee and protect the respondent in all of his rights, instructed the jury to disregard all testimony of the witness as to whether or not the respondent was intoxicated or under the influence of intoxicating liquor.

The respondent was in no way prejudiced by the delay in striking the testimony. It is argued that at the close of the State's case the respondent, because of the delay in striking this particular evidence, was prevented from moving for a directed verdict.

The State did not rely alone on the ground that the respondent was operating the motor vehicle while under the influence of intoxicating liquor. It also relied on the fact that the respondent drove the motor vehicle in a reckless, wanton and criminal manner, offering proof and introducing testimony of the speed at which the motor vehicle, namely a tractor with trailer or box attached, weighing in the aggregate in excess of ten tons, was travelling. Testimony was given, and if believed by the jury, could have led them to believe that this huge, heavy, speeding vehicle was being driven in a reckless and wanton manner in that it veered from one side of the highway to the other, and travelled on its wrong side of the road, in utter disregard of the rights or safety of others.

The respondent was in no way prejudiced by the failure to strike the evidence complained of and takes nothing by his first exception.

## EXCEPTION NO. 2

Mr. Edwin Cox, a witness called by the State, was being examined and questioned on direct examination by the County Attorney. This same witness had testified twice previously that he did not, at the time of seeing certain events take place, identify the man he saw as this respondent; neither could he identify the respondent in the courtroom as being the man he saw on Spring Street in Auburn on the late afternoon of December 24th. The witness testified that shortly after 5 o'clock he visited a grocery store on Spring Street and made some purchases.

The County Attorney then asked this question:

Q. And leaving the store for your home was your attention attracted to anything in particular?

A. Yes, sir.

Q. What was that?

MR. BERMAN: Now if your Honor please, this witness has already testified twice,—in the first instance, that he did not and could not identify the defendant, Mr. Hamilton. Now, if that is so, then we submit that his evidence as to what he saw at 5:10 would have no bearing upon the case and has no relevancy, has no factual connection, and is not associated with the respondent.

THE COURT: I will admit it and you may have your right —

MR. BERMAN. Note my exception.

THE COURT. Yes.

Q. Will you answer what your attention was attracted to, Mr. Cox?

A. I noticed a truck double parked in the street with the cab door open just about between 82 and 83 Spring Street.

Q. And is that closer to Court Street than the store was?

A. Yes.

Q. Now, in what direction was the tractor part of the truck?

A. It was headed north toward Court Street.

Q. Toward Court Street. Was it plump in the middle of the road?

A. That I could not say. It was double parked.

Q. Yes. Did you observe anybody in the cab, as you looked in that area?

A. No, sir.

Q. And was there — did you know — did you recognize or see any name on that truck?

A. It was a Faltin truck.

Q. And where was — where were you when you made the observation, how far would you say in feet away from the truck when you saw it?

A. Approximately 50 feet.

Q. And then what was your attention attracted to?

A. Someone came out of a door, a man, at 87 Spring.

Q. Yes?

A. Started down the front porch steps and stumbled onto —

MR. BERMAN. May it please the Court, I object to that since this witness cannot identify the respondent or associate him with it.

THE COURT. I will admit it subject to your —

MR. BERMAN. Note my exception.

THE COURT. Yes.

MR. BERMAN.   Came out of 87?

A.   Yes.
(Mr. Beauchamp, resuming.)

Q.   Will you tell the Jury what you saw?

A.   Saw a man stumble on next to the last front step and get up.  And there is a picket fence runs along on the left of the sidewalk and he stumbled against the picket fence and then stumbled again to his knees.  Just fell where the snowplow plows out and removes the snow.  Then crossed the street and got into his truck.

Q.   Between the time he stumbled the last time to his knees how did he propel himself?  How did he walk?  In what manner did he walk towards the truck?

A.   Well, he acted as if he was in a hurry, that's about all.

"Testimony cannot be excluded as irrelevant, which would have a tendency, however remote, to establish the probability, or improbability of the fact in controversy."  (*Trull* v. *True*, 33 Me. 367) ; *State* v. *Charles H. Witham*, 72 Me. 531.

The identity of the accused is always an important element and its proof is always essential.  The relevancy of evidence of identification depends upon the circumstances of the case.  As a general rule, any fact which would convince or tend to convince a person of ordinary judgment in carrying on his every-day affairs, as to the identity of a person, will be received.  The evidence will be permitted to take a wide range.  *State* v. *Lewis Stebbins, Andrew L. Roberts and Porter Kellogg*, 29 Conn. 463.

Direct evidence of identification is not required, but to warrant conviction upon circumstantial evidence, facts and circumstances proved must be sufficient to establish guilt of the accused to a moral certainty and to exclude every other reasonable hypothesis.

Identity of accused may be established by circumstantial evidence. *People* v. *Fitzpatrick et al.*, 359 Ill. 363, 194 N. E. 545.

The fact that the witness could not *himself* identify the respondent as the person whose actions he described is not conclusive on the question of the admissibility of his testimony. If, as here, the other evidence in the case is sufficient to go to the jury on the question of the identity of the person described, the admission of the testimony is not per se reversible error. The respondent could have protected himself by request for proper instructions to the jury with respect thereto.

The respondent's Exception No. 2 is overruled.

### EXCEPTION No. 3

This exception relates to the refusal of the Presiding Justice to order a mistrial.

The reason set forth by the respondent in his Bill of Exceptions occurred during the direct examination of a witness for the State.

> Q. (By County Attorney)
> May I direct the next question — I will strike out that question. As you approached the south side of the bridge so-called, the side near Portland, were you pushed off the road as you travelled towards Lewiston?

MR. BERMAN.  I object, if your Honor please.

THE COURT.  Because it is leading?

MR. BERMAN.  Leading.  My Brother is assuming a conclusion.  His characterization of what the situation is is entirely prejudicial and improper.

THE COURT.  That is excluded.

In the absence of the jury, counsel for respondent addressed a motion to the court asking that a mistrial be declared, arguing that the use of the words: "Were you pushed off the road?" was prejudicial to the respondent. After the argument by the respondent's attorney, answered by the County Attorney, the Presiding Justice said:

"A question was asked which was inadmissible and which was excluded.  I did not and do not sense any reaction of the Jury to it.  I think the matter is cured.  I know of no reason for granting a mistrial, and the officer may bring the jury back."

To this ruling the respondent duly excepted.

The ordering of a mistrial is discretionary with the Presiding Justice and no exceptions lie to his refusal unless that discretion is abused. *Mary A. Gregory* v. *Benjamin C. Perry*, 126 Me. 99; *Theodore Ritchie* v. *F. Hewell Perry*, 129 Me. 440; *State of Maine* v. *Leo Rheaume*, 131 Me. 260; *Helen Collins* v. *Anne Dunbar, Constance M. Poland* v. *Anne Dunbar, Frances Poland* v. *Anne Dunbar*, 131 Me. 337.

An examination of the record in this case shows that there was no abuse of his prerogative by the Presiding Justice.

This Exception No. 3 is overruled.

## EXCEPTION NO. 4

This exception deals with the testimony of Dr. Theodore Stevens Smith, called on behalf of the State in rebuttal.

The record reveals that this witness was a graduate of Columbia College and of New York Medical School, having received the degree of Doctor of Medicines. He was serving his internship at the Central Maine General Hospital at the time of this accident, and was in the accident room, so-called, when this respondent, Hamilton, was brought in.

The respondent objected to the testimony of this witness —"In my opinion, the man (meaning the respondent), was under the influence of alcohol."

In order to make this exception clear we quote from the record and the Bill of Exceptions:

Q. From your observation what was your opinion as to his sobriety?

MR. BERMAN. I object

THE COURT. What is the ground?

MR. BERMAN. I don't believe there has been sufficient basis for an opinion. Witness has testified the patient was incoherent—already in the record. He was badly hurt. State of shock.

THE COURT. Can't you ask the witness to describe his condition?

MR. BERMAN. I might also add, if Your Honor please, this is not rebuttal.

Q. Would you kindly describe the condition of Mr. Hamilton to the Jury, in your own words?

THE COURT. As you observed it.

Q. Yes, as you observed it.

A. As I observed Mr. Hamilton, he was not in a state of surgical shock. His blood pressure, and his pulse were good. He was not sweating and his skin was not cold; and on the contrary, his skin was flushed and he was warm. That is not the picture of shock. And at no time during the course of the evening or the next day that followed was Mr. Hamilton given any treatment for shock otherwise than sedation which we normally give to a patient. His actions were loud, abusive in his language to the Trooper and to myself and to all those who attempted to aid him, and he demanded help for his leg in no uncertain terms. In my opinion, the man was under the influence of alcohol.

MR. BERMAN. I ask that that be stricken from the record, last sentence?

THE COURT. I will leave it in.

MR. BERMAN. Reserve our exception?

THE COURT. Yes.

Although the grounds for the exception are not clearly stated in the record, counsel for the respondent apparently is claiming that the witness did not make sufficient observations of the respondent to allow him to formulate an opinion as to his condition with regard to alcohol. This ground is more or less spelled out with regard to the exception to Dr. Smith's testimony. Actually, however, the claim of respondent appears to be that since the respondent had suffered certain injuries as the result of the accident, the doctor would be unable to state whether the symptoms observed were the result of alcohol or the result of the injuries. This, however, would be a question of fact to be determined by the jury from all the testimony involved.

The general rule with regard to opinion evidence as to intoxication has already been discussed under Exception No. 1 and needs no further citations of authorities.

The witness in question was a doctor who, although not licensed to practice, had considerable experience as an interne and as a medical student. He had ample opportunity to observe the respondent, estimate his injuries, and ascertain to what extent those injuries affected his behavior. It was his considered opinion that respondent's behavior as testified to was the result of alcohol rather than from his injuries. There being a conflict of testimony on this issue, it was for the jury to decide on the basis of all the facts.

This exception has no merit.

## EXCEPTION No. 5

This exception deals with the opinion given by Dr. John Wellington Carrier, another interne at the Central Maine General Hospital. Over the objection of the respondent this witness was allowed to express his opinion that the respondent was intoxicated when he was being treated at the hospital, following the accident.

What has been said regarding respondent's Exception No. 4 applies equally to this exception.

## EXCEPTION No. 6

This exception deals with the refusal of the Presiding Justice to strike from the record the testimony of the State's witnesses, Dr. Theodore S. Smith, Dr. John W. Carrier and Dr. Ralph Timberlake because it relates to their opinions as to the respondent being under the influence of intoxicating liquor.

We have discussed under Exceptions No. 4 and No. 5 the testimony of Dr. Smith and Dr. Carrier, and as explained, see nothing in the respondent's contention as to the admis-

sibility of their testimony. The respondent now attempts to press the same reasons under a motion to strike. The testimony of all three doctors should stand as the record indicates and not be stricken therefrom.

EXCEPTION NO. 7

This exception deals with the refusal of the Presiding Justice to declare a mistrial because of improper argument by the County Attorney, and in order to make the exception clear, we quote the following excerpts from the record:

MR. BERMAN. For the record, the Attorney for the State has argued that the person whom he saw and identified, staggered. Diametrically opposed to what was Mr. Cox's testimony. Mr. Cox testified he did not stagger.

THE COURT. The Jury will remember.

MR. BERMAN. May it please the Court, we object to my Brother's reference and we quote "We knew that he knew somebody there at 87 Spring Street," and that reference in connection with the argument is calculated and intended to inflame the Jury, prejudicial to the defendant; and we ask that the Court either instruct the Jury or declare a mistrial. In this argument it is impossible for this respondent to protect his constitutional rights. We feel that the rights of the respondent are being violated by this type of argument. And we respectfully submit, under the authority of State vs. Hines, that this Court now declare a mistrial.

THE COURT. Motion denied. You may proceed, Bro. Beauchamp.

MR. BERMAN. Will you reserve our Exception?

THE COURT. Certainly.

As stated under Exception No. 3, the ordering of a mistrial is discretionary with the Presiding Justice and no exceptions lie to his refusal unless that discretion is abused. We see no abuse of discretion apparent upon reading the record.

## APPEAL

After verdict for the State, the respondent filed a motion for a new trial and upon its denial an appeal was duly taken.

The motion was based on the usual grounds that the verdict was against the law, the evidence, and contrary to the charge of the Presiding Justice. In addition, as a reason for a new trial, that the respondent was prejudiced by improper questions submitted by the attorney for the State, in the presence of the jury to the respondent and other witnesses, which were calculated to arouse the prejudice of the jury against the respondent, thereby denying to the respondent a constitutional trial and violating his constitutional rights.

In cases of this kind, in order to convict a respondent of manslaughter based upon negligence, it is incumbent on the State to establish a degree of negligence or carelessness which is denominated gross or culpable. *State* v. *Wright,* 128 Me. 404. "Gross or culpable negligence in criminal law involves reckless disregard for the lives or safety of others. It is negligence of a higher degree than that required to establish liability upon a mere civil issue." *State of Maine* v. *Ela,* 136 Me. 303, 308. Furthermore, if the State seeks to convict of manslaughter based upon the fact that death was caused involuntarily while the respondent was in the performance of an unlawful act, it must further show that that unlawful act was *malum in se,* or if *malum prohibitum,* that it was the proximate cause of the homicide. *State* v. *Budge,* 126 Me. 223.

The denial of the respondent's motion for a new trial presents first the question, whether the jury was warranted from all of the evidence presented in believing and finding beyond a reasonable doubt the guilt of the respondent.

The denial of the respondent's motion for a new trial and appeal therefrom bring into question the jury's right to render the verdict as given. The general rule is that it is within the province of the jury to weigh and resolve conflicting evidence, and not of the appellate court in review. As stated in 24 C. J. S. 809:

> "It is within the province of the jury to weigh and resolve conflicting evidence, and ordinarily the appellate court may not determine the credibility of such evidence. . . . . . The presumption is in favor of the verdict, and the appellate court will not interfere when the evidence is conflicting if there is material evidence tending to support the verdict, although it may differ from the jury as to the preponderance of the evidence; the verdict ordinarily is binding and conclusive on review."

The jury could readily have believed beyond a reasonable doubt, from the evidence presented, that the respondent was operating his truck in a wilful and wanton manner on the day in question, disregardful of the rights and safety of others on the highway. That respondent admitted taking three drinks of whiskey during the afternoon prior to the accident. That two police officers smelled liquor on his breath after the accident. That three doctors believed he was under the influence of liquor when he was admitted to the hospital after the accident. That the respondent brushed a car with his truck at the corner of Court and Spring Streets. That some distance further, on the Oakdale Bridge, he almost collided with a car driven by a State trooper. That as he approached the scene of the fatal accident he was driving on the left side of the road. That the speed at which he was driving was excessive, having in mind he was

driving a huge tractor-trailer which weighed in excess of ten tons,—a menace on the highway. That at the point of impact he was completely on the wrong side of the road. That his entire progress from Spring Street in Auburn to the scene of the accident was a series of negligent, reckless acts, showing a mind completely abandoned to the consequences and disregardful of the rights of others.

The reason offered by the respondent for the accident was that the steering and braking mechanism of the truck were defective. That he knew of such defects in the morning at a time several hours prior to the accident. That he did nothing to remedy these defects before operating such a defective vehicle on the public highway. The jury could well have concluded that the respondent operated the motor vehicle recklessly and wilfully and such recklessness was a direct cause of the decedent's death.

The evidence as presented by the respondent conflicts with the testimony of witnesses for the State. This being so, it becomes a question for the jury to determine as to where the truth rests. *State of Maine* v. *Henry Lambert,* 97 Me. 51; *State of Maine* v. *Ignazio Albanes alias Joe Bill,* 109 Me. 199; *State of Maine* v. *Michael J. Mulkerrin, alias Michael Mulkern,* 112 Me. 544.

In his brief the respondent argues that he should be granted a new trial because he was deprived of his constitutional rights guaranteed to him by Amendment XIV of the Constitution of the United States and Article 1, Section 6, of the Constitution of Maine.

The real questions presented under this argument in the respondent's brief are whether or not the rights of the respondent were prejudiced. We do not believe that they were. All of the testimony, the conduct of Counsel, and the

wise and correct rulings of law made by the Presiding Justice, and his charge to the jury lead this court to believe that the respondent had all he was entitled to, namely, an impartial trial.

The evidence was not of that unsatisfactory character which would permit this court's interference with the verdict. The law has committed to the jury the determination of the credibility of witnesses and the weight to be accorded their testimony, and where the evidence may be merely conflicting this court will not substitute its judgment for that of the jury.

The motion for a new trial must be denied.

The entry shall be

*Exceptions overruled.*

*Appeal denied.*

*Judgment for the State.*