STATE of Maine

v.

**Stephen B. RHOADES.**

Supreme Judicial Court of Maine.

Dec. 9, 1977.

Joseph M. Jabar, Dist. Atty., J. William Batten (orally), Asst. Dist. Atty., Augusta, for plaintiff.

Wathen & Wathen by Malcolm Lyons (orally), Augusta, for defendant.

Before DUFRESNE, C. J., and WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

ARCHIBALD, Justice.

Stephen B. Rhoades was indicted, tried before a jury, and convicted of reckless

homicide. 29 M.R.S.A. § 1315.[1] The crime is alleged to have been committed on March 31, 1976, prior to the repeal of Section 1315. Judgment of guilt having been entered on the verdict, Mr. Rhoades appealed, which appeal we now deny.

## FACTS

On March 31, 1976, at "about nine o'clock" in the evening, Cheryl Reed was driving her 1973 Chevrolet Vega westerly on Route 202 in Winthrop while the appellant was driving his GMC pickup truck easterly thereon. The two vehicles were involved in nearly a head-on collision that resulted in the instantaneous death of Mrs. Reed.

From the evidence the jury could conclude that the appellant, being at the time under the influence of intoxicating liquor, in negotiating a turn to his right failed to remain on his own side of the highway and collided with the Chevrolet Vega. As depicted by the wreckage the point of impact was three feet northerly of the centerline of Route 202 in Mrs. Reed's lane of travel. Approaching the point of collision from the west, as was the appellant, there was nearly unlimited visibility easterly, while westerly moving traffic would have limited visibility because of the grade and the turn.

The indictment alleges that the appellant's operation of this motor vehicle was "with reckless disregard for the safety of others" and was the cause of the fatal accident. The State argues that the facts support this ultimate result.

Appellant raises several points on appeal, all of which have been appropriately saved for appellate review.

1. "Any person who operates a vehicle with reckless disregard for the safety of others and thereby causes the death of another person, when the death of such person results within one year, shall be guilty of the offense of reckless homicide. Any person convicted of reckless homicide shall be punished by a fine of not more than $2,000 and by imprisonment for not less than 6 months nor more than 5 years. . . ." Originally enacted by P.L.1957, ch. 333, § 2.

I

## SUFFICIENCY OF THE EVIDENCE

A violation of 29 M.R.S.A. § 1315 has been likened to the crime of reckless driving with the superadded feature that the reckless driving caused the death of another within one year of the event. *State v. Grant*, Me., 266 A.2d 232, 237 (1970). Stated in other terms, prior to the enactment of Section 1315, a death caused by these same acts would have been classified as manslaughter. *State v. London*, 156 Me. 123, 135, 162 A.2d 150, 157 (1960), makes this emphatically clear, stating:

"An examination of the elements of the crime established by the later statute and of the elements of manslaughter by criminal negligence as set forth in our decisions discloses that the substance of the crime in each case is the operation of an automobile with reckless disregard for the safety of others, thereby causing the death of another. We find no distinction between the elements of the two crimes. . . . "

It is true that no one actually saw the appellant driving the pickup truck. Within moments after the accident, however, several people observed him in a position consistent with having been the driver thereof at the time of the accident.[2] Under such circumstances the State satisfactorily demonstrated that he was the operator. *State v. Hoffses*, 147 Me. 221, 227, 85 A.2d 919, 922 (1952). There seemed to be unanimity among the witnesses that he demonstrated the classic signs of being under the influence of intoxicating liquor. A cocktail waitress testified that appellant left a tavern within thirty minutes of the accident, having consumed within the preceding

Effective May 1, 1976, Section 1315 was repealed, the proscribed conduct being now subject to 17–A M.R.S.A. § 204, subparagraph (2) of which provides:

"Criminal homicide in the 4th degree is a Class B crime, provided that it is a defense which reduces it to a Class C crime if it occurs as the result of the reckless operation of a motor vehicle."

2. Note factual summary hereinafter under Part II–A.

three hours "about eight mixed drinks" of "Scotch, JB and water." Appellant submitted to a blood test (which will be discussed in some detail hereinafter) and it was stipulated that the test result demonstrated 0.20% by weight of alcohol in his blood.[3]

We have upheld convictions for motor vehicle homicides where the evidence conjoined the operation of a motor vehicle by one under the influence of intoxicating liquor and his operation thereof with reckless disregard for the safety of others.[4] *State v. Ifill*, Me., 349 A.2d 176, 184 (1975); *State v. Hamilton*, 149 Me. 218, 240, 100 A.2d 234, 245 (1953).

We conclude that there was sufficient evidence to support the verdict of the jury.

## II–A

### DEFENDANT'S STATEMENT

■ A police officer arrived at the scene shortly after the accident, observed the appellant, and had a conversation with him while seated in the police officer's automobile. Appellant was correctly informed of his 5th Amendment rights. After a preliminary hearing to determine the voluntary nature of the statements made thereafter by the appellant, the Justice presiding determined that the statements were voluntary and allowed the officer to testify before the jury as to the conversation he had with the defendant. The purpose of the evidence was to prove operation by the appellant and to invoke his explanation of the accident. The testimony is as follows:

"Q What did you ask him, officer?

A I asked him where he had just come from.

Q What did he say to you?

A He said The Pub. I said what Pub, he said in Augusta, I asked him where he was from and he said Augusta and I then asked how he could be coming from The Pub in Augusta when he was actually heading toward Augusta and at that time, he said he didn't know where he had been.

Q Did you ask him what happened?

A Yes, I asked him what had happened, he said he saw headlights coming for him and tried to avoid them and that was all he could remember.

Q And did you ask him whether or not he had been drinking or how much he had to drink?

A Yes, I did, he wouldn't elaborate on that.

Q Did you ask him anything else about whether or not he was driving?

A Yes, I asked him if he was operating the vehicle and he advised that he was. I asked if there was anyone with him in the vehicle and he stated no."

We see no abuse of discretion, or misapplication of legal principles, in the admission of this statement, even though the appellant may have been under the influence of intoxicating liquor at the time he gave it. *State v. Warner*, Me., 237 A.2d 150, 160 (1967). The Justice below complied with the mandate of *State v. Merrow*, 161 Me. 111, 121, 208 A.2d 659, 664 (1965), as this case has been modified by *State v. Collins*, Me., 297 A.2d 620 (1972).

■ Assuming the contrary, however, the error would be harmless beyond a reasonable doubt.

James Diorio, who lived adjacent to where the accident occurred, heard the crash and went immediately to the scene where he observed the defendant alone in his truck. Another witness, Steven Lunt,

3. "If there was, at the time alleged, 0.10% or more by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section." 29 M.R.S.A. § 1312(5)(C).

4. *See also State v. Ronan*, Me., 380 A.2d 207 (1977), upholding a conviction for reckless driving where the evidence depicted the operation of a motor vehicle by the defendant while he was under the influence of intoxicating liquor and was so operating the motor vehicle in an "erratic and dangerous course."

arrived at the scene almost immediately after the accident, looked into the pickup truck and saw the appellant "behind the wheel, sitting up." A neighbor of Mr. Diorio, Robert Holmes, was at the scene before any persons were removed from the vehicles and likewise saw the appellant in his truck. A State trooper arrived shortly thereafter and noted the presence of the appellant "standing outside of the pickup."

Thus, there was ample circumstantial evidence consistent with our holding in *State v. Hoffses, supra,* to prove that the appellant was the operator of the pickup truck. His statement was merely cumulative to evidence which, undisputed, could lead only to the same conclusion. Therefore, appellant was not prejudiced by the admission of the evidence.

### II–B

### BLOOD TEST

■ The Justice below also held a preliminary hearing in the absence of the jury to determine whether or not the appellant had voluntarily agreed to submit to a blood test as demanded by the officer. It was the officer's contention that he explained the statutory options to the appellant and that in his judgment the appellant, despite the fact that he was then under the influence of intoxicating liquor, understood these options and consented to the test. *See State v. Warner, supra.* This evidence was not denied. The result of the test was admitted.

The Justice applied correct legal principles and his conclusions were rationally supported by the evidence when he determined that the evidence was admissible. *State v. Ayotte,* Me., 333 A.2d 436 (1975). Such being the case, the ruling must be sustained. *State v. Capitan,* Me., 363 A.2d 221, 223 (1976).

### III

### INSTRUCTION CONCERNING ALCOHOLIC TESTING

Appellant argues that it was error for the Justice below to instruct the jury specifically on the inference which may be drawn when the result of a blood alcohol test is admitted in evidence. The Justice read to the jury from the statute dealing with operating a motor vehicle while under the influence of intoxicating liquor (29 M.R.S.A. § 1312) and specifically referred to the test results therein described. Appellant argues that these instructions should be given only if a person is charged with violating Section 1312 and should not be given where the alleged violation relates to Section 1315.

■ Appellant cites no authority to support this position, nor has our research disclosed any. As we have pointed out in *State v. Hamilton,* 149 Me. 218, 100 A.2d 234 (1953), a violation of 29 M.R.S.A. § 1312 is relevant evidence which a jury may use in determining whether the operator of a motor vehicle is guilty of reckless driving. If individuals who observe the driver of a motor vehicle are free to testify as to his intoxicated condition, or lack thereof, we can see no logical reason why the jury should not be aware of a blood test which may be of assistance to the jury in making that ultimate decision. It is merely another type of evidence. As the Justice below carefully pointed out to the jury, the blood test evidence was merely prima facie evidence and was not made "obligatory" on the jury.

There is no merit to this objection.

### IV

■ The final claim of error arises from the following instruction given the jury:
"Now, in this particular case, the Defendant didn't take the witness stand.

It is his constitutional right not to do so and you are not to consider this in any way, you are not to reflect upon it and not to discuss it in the Jury Room."

Appellant cites Rule 512, M.R.Evid., as authority for his position. Rule 512 provides:

"(a) Comment or inference not permitted. The claim of a privilege, whether in the present proceeding or upon a prior

occasion, is not a proper subject of comment by judge or counsel in a criminal case. No inference may be drawn therefrom.

(b) Claiming privilege without knowledge of jury. In criminal cases tried to a jury, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury.

(c) Jury instruction. Upon request, any accused in a criminal case against whom the jury might draw an adverse inference from a claim of privilege is entitled to an instruction that no inference may be drawn therefrom."

In order that our analysis may be complete, the record indicates that appellant's counsel did not request the Justice below to refrain from giving the instruction now complained of, nor did he make any motion for a mistrial as a result of the instruction.

We have held that calling the invocation of this privilege to the attention of a jury is not per se prejudicial. *State v. Robbins,* Me., 318 A.2d 51, 57 (1974). It must be borne in mind that no contention is made that the language used by the Justice was erroneous. In view of the totality of the evidence in this case, which points with overwhelming strength at the defendant's reckless operation of the vehicle, we would be hypertechnical to hold that the giving of this instruction added any "critical weight" to the State's case which could be deemed prejudicial to the appellant. *State v. Goldman,* Me., 281 A.2d 8, 14 (1971). *See also United States v. Woodmansee,* 354 F.2d 235 (2d Cir. 1965); *Bellard v. United States,* 356 F.2d 437 (5th Cir. 1966), *cert. denied,* 385 U.S. 856, 87 S.Ct. 103, 17 L.Ed.2d 83. *But see State v. Warren,* Me., 312 A.2d 535, 543 (1973).

We note that in both *Goldman* and *Warren* the issue was generated by a timely motion for a mistrial. If the appellant here had deemed the error of sufficient gravity to seriously prejudice his right to a fair trial, certainly he would have made that position known to the Justice below. Rather than that, he confined his objection only

to the following statement without any further elaboration:

"I would also object to the Court's mentioning that the Defendant in this case did not testify and that is his constitutional right and, for the record, I would also object . . . ."

The error was harmless.

Appellant has raised other points on appeal which we have considered but they do not warrant further discussion nor extended comment.

The entry is:

Appeal denied.

Judgment affirmed.

WERNICK and GODFREY, JJ., and DUFRESNE, A. R. J., concur.

DUFRESNE, A. R. J., sat at oral argument as Chief Justice, but retired prior to the preparation of the opinion. He has joined the opinion as Active Retired Justice.

POMEROY, J., did not sit.

DELAHANTY, J., sat at argument and conference but did not otherwise participate.