WINSLOW B. MARSTON vs. NELSON . DINGLEY, JR., and others.

Kennebec.    Opinion February 29, 1896.

*Evidence.    Expert.    Libel.    Presumption.*

Whether a witness called as an expert possesses the requisite qualifications to enable him to testify, is a preliminary question addressed to the discretion of the court.

That decision must be final and conclusive unless it is made clearly to appear from the evidence that it was not justified, or was based upon some error in law.

A photograph of the plaintiff was sent to a newspaper with the full knowledge on his part that it was to be used for reproduction in that paper.

The "chalk process" was used by the artist in making the reproduction.

In that case, where suit was brought against the paper for alleged libelous words and caricatures, it was proper for the defense to ask an expert whether or not the cut was a good result, as taken by the process mentioned, from the photograph.

In proof of the truthfulness of the description of the condition of the plaintiff's place of abode, evidence was allowed as to the condition a short time after the publication of the alleged libel. This was admissible only for the purpose of describing the permanent features of the abode, as reflecting light on the real condition upon the day of the publication.

The habits and personal appearance of a person being shown, there is a presumption that they continue the same unless the contrary is proved.

ON EXCEPTIONS.

This was an action on the case for slanderous words alleged to have been published in the Lewiston Journal, which words the plaintiff claimed had damaged the plaintiff. The words were descriptive of the filthy or unclean condition of the plaintiff's person and the unclean condition of the habitation of the plaintiff at the time of the publication of the article in the paper complained of as slanderous. The date of the publication was February 24, 1894. The defendants claimed in the defense that the words published were true, and faithfully and truthfully described the condition of the place of habitation, or abode of the plaintiff, at the time when the article was published and that the same was published without malice. In proof of the truthfulness of the description of the condition of the plaintiff's place of abode at the date of the publication, the court under the

seasonable objections of the plaintiff allowed the defendants to introduce testimony to show the condition of the place of abode at a time after the date of said publication.

The plaintiff also complained in the declaration in his writ that the defendants published in said newspaper, as a part of said publication, a scandalous and libelous caricature grossly misrepresenting the personal appearance of the plaintiff.  Harry E. Andrews, one of the defendants, was called as a witness for the defendants and was shown a photograph of the plaintiff and was shown the alleged caricature of the plaintiff and was then allowed under the objection of the plaintiff's counsel to testify as follows : . . .

"Ques.  I will ask you whether or not the cut in the newspaper which I have shown you is a good result, as taken by the process you have mentioned, from the photograph which you have seen? Ans.  I consider it a good result of the chalk-plate process."

"Ques.  State whether or not the chalk-plate process, which you have mentioned, is the most approved process used by the Maine newspapers? Ans.  It is the quickest and most satisfactory process that newspapers have yet been able to get."

The objection of the plaintiff to Andrews' testimony was that he was allowed to express his opinion on the alleged caricature.

Exceptions were also taken to the admission of other testimony as stated in the opinion.

The verdict was for the defendants.

*S. S. Brown and F. A. Waldron,* for plaintiff.

Witness cannot be allowed to testify as an expert and give his opinion upon any subject matter that is open to and within the common knowledge and observation of all men and which does not involve any special skill or experience.

The question was not how this alleged caricature was made, what process was used, or what is the best method of reproducing such pictures, but was in fact a caricature such as the plaintiff had a right to complain of.

It was stated by the court in *Lyman* v. *Insurance Co.* 144

Allen, 329, that "it is quite clear that no witness can be permitted to testify to his own individual opinion merely, upon an issue that depends upon facts which involve no particular science or information but are within the common knowledge of man."

Counsel also cited : *Lewis* v. *Brown*, 41 Maine, 448 ; *Mulry* v. *Insurance Co.* 5 Gray. 541 ; *Perkins* v. *Insurance Co.* 10 Gray, 312 ; *Nowell* v. *Wright*, 3 Allen, 166 ; *White* v. *Ballou*, 3 Allen, 408 ; *Raymond* v. *Lowell*, 6 Cush. 531 ; *Mayhew* v. *Mining Co.* 76 Maine, 100 ; *State* v. *Watson*, 65 Maine, 74 ; *Lincoln* v. *Barre*, 5 Cush. 590 ; *Robertson* v. *Stark*, 15 N. H. 109-113.

What the condition of the premises, or room occupied by the plaintiff, was at the time described in the publication defendants' witnesses knew nothing about ; nor did they claim to know anything about its condition at that time.

The period of time that had elapsed between the publication and the respective visits of these witnesses was so great that, upon all principles of law bearing on the subject, the testimony should not have been received. The condition of a room as found to-day has no tendency to prove what its condition was six months or a year ago. *Hutchinson* v. *Methuen*, 1 Allen, 33.

*H. M. Heath* and *C. L. Andrews*, for defendants.

SITTING : PETERS, C. J., WALTON, FOSTER, HASKELL, STROUT, JJ.

FOSTER, J.   Whether a witness called as an expert possesses the requisite qualifications to enable him to testify, is a preliminary question to be decided by the court.   That decision must be final and conclusive unless it is made clearly to appear from the evidence that it was not justified, or that it was based upon some error in law. *State* v. *Thompson*, 80 Maine, 194 ; *Chase* v. *Springvale Mills Co.* 75 Maine, 156 ; *Jones* v. *Roberts*, 65 Maine, 276.

The exceptions in this case afford no ground for a decision that any such error was committed by the justice presiding at the trial.

This action was for alleged libellous words and caricatures published in the Lewiston Journal on the 24th day of February, 1894. One count in the plaintiff's writ alleged that a cut printed in the defendants' paper so grossly misrepresented him that it was a libellous caricature.

A photograph of the plaintiff was sent to the Journal with the full knowledge on the part of the plaintiff that it was to be used for reproduction in that paper. The "chalk-plate" process, so-called, was used by the artist in reproducing the plaintiff's picture. From the testimony of Harry E. Andrews, one of the defendants' witnesses, it appears that it is the quickest and most satisfactory process in use in newspaper offices in this state.

This witness called as an expert, was asked whether or not the cut in the newspaper was a good result, as taken by the process mentioned, from the photograph.

Objection was interposed and exception taken to the admission of the question and answer on the ground that the opinion of the witness was called for and given in reference to the alleged caricature. But that is not so. The witness was not asked to compare the cut with the plaintiff's features, nor whether it was, in his opinion, a good likeness. It called for his opinion only in reference to the artist's skill, whether or not the cut was a "good result" from the process.

The witness was properly qualified as an expert. He had made a special study in regard to the method of obtaining reproductions. Whether the artist in applying his skill to the chalk-plate in that process, by the use of lines alone, skillfully reproduced the photograph from which he worked, was a question that became material upon the issue raised. If the work was done with reasonably good skill, the result would be called good ; and the defendant had a right to introduce the testimony of competent experts upon the question. It in no way infringed upon the allegation in the writ, that the cut grossly misrepresented the plaintiff's real features. It had reference to the care, skillfulness and artistic science involved in reproducing a given photograph by the chalk-plate process in a particular case.

Such evidence was clearly admissible. It related to facts

pertaining to a particular science, art or business not within the common knowledge of men.

Another exception is taken to the admission of certain evidence bearing upon the unclean condition of the habitation of the plaintiff at a time subsequent to the publication of the alleged libellous words.

The charge in the writ was in reference to the words which purported to describe the condition of the plaintiff's place of abode at the time when the article was published,—that he had his horse in the house, a room with bed, stove and stand, and walls and ceiling black with soot.

In proof of the truthfulness of the description of the condition of the place at the date of the publication, the court allowed the defendants to introduce testimony to show the condition of the premises some months after the publication.

The question before us is in reference to the correctness of this ruling.

We certainly can see no error in admitting the testimony.

This evidence from one witness was in relation to what he saw there but a short time after the publication. He describes certain partitions as set off for the use of the horse. The walls and ceiling are described as black with soot. Nothing is said about the cleanliness of the bed or other articles of furniture. That they were there is undisputed, not only at the date of the publication, but also afterwards, at the time the witness refers to. The witness testified to seeing the horse as he looked in where the plaintiff was accustomed to live. This was objected to by counsel for the plaintiff, and the court limited its application to showing the interior condition of the building, partitions, stalls, etc., for general uses. The testimony of the witness was limited by his answers to merely a description of the permanent features of the abode, with no reference to their cleanliness and omitting all temporary or changeable features. To be sure, he described the walls and ceilings as black with soot. This was of matters decidedly permanent, for soot accumulates by the slow deposit of time.

This testimony, as that also of the other witness upon the same point, was confined to the permanent features of the abode,

and although it was given as of a date subsequent to the publication, it was clearly relevant, as reflecting light on the real condition upon the day when the publication was made.    It tends to show the probable condition of the plaintiff's abode at that time.    Much discretion must be allowed to the court in matters where the question relates to the relevancy of testimony as tending to show the probable condition of things at a particular date, which are permanent in their nature, and not liable to sudden changes in their condition or appearance.

Certain presumptions become applicable in such cases,—the presumption of uniformity and continuance.    But as such presumptions are of fact, their effect depends upon the extent to which the quality of permanency enters into the nature of the matter in question.    They are much stronger in matters that are of a continuous and permanent nature, than those that are changeable and transitory.    *Greenfield* v. *Camden*, 74 Maine, 56, 65.

Thus, where it has been shown what the habits and personal appearance of a person are, the presumption is that such habits and appearance continue the same unless proved to the contrary.    2 Whart. Ev. § 1287.    Lawson on Presumptive Evidence, 184.    *Eureka Ins. Co.* v. *Robinson*, 56 Pa. St. 256; *Wood* v. *Matthews*, 73 Mo. 482;    *Hine* v. *Pomeroy*, 39 Vt. 211; *McMahon* v. *Harrison*, 6 N. Y. 443.

This testimony, therefore, which tended to show that, after the publication of the alleged libel, he continued to live in a house with partitions and stalls for a horse, sooty walls and ceiling, had a legitimate bearing upon the condition at the time in issue, and was admissible under the issue presented where truth was pleaded, and want of any express malice.

*Exceptions overruled.*