**STATE of Maine**

v.

**Melvin F. WARNER.**

Supreme Judicial Court of Maine.

Dec. 26, 1967.

Foahd J. Saliem, County Atty., Augusta, for plaintiffs.

Julius B. Levine, Waterville, for defendant.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

WEATHERBEE, Justice.

On appeal from conviction by the jury upon a charge of reckless homicide in violation of 29 M.R.S.A. § 1315. The pertinent part of this section reads as follows:

"Any person who operates a vehicle with reckless disregard for the safety of others and thereby causes the death of another person, when the death of such person results within one year, shall be guilty of the offense of reckless homicide."

In the early morning of January 1, 1966, the victim, Emma Charity, while crossing College Avenue in Waterville with two other women, was struck and killed by an automobile which the state alleges was operated by the defendant. The defendant was arrested a few minutes later in Fairfield, in Somerset County, on a charge of operating while under the influence of intoxicating liquor which charge is still pending. An indictment against him charging reckless homicide was seasonably

returned by the Grand Jury of Kennebec County and a jury trial took place on March 22 to 25, 1966, on which latter date the defendant was found guilty.

Pending trial the defendant filed motions for discovery dated February 4, 1966; a motion for return of seized property and suppression of evidence dated February 10, 1966; a motion for bill of particulars dated February 16, 1966; a motion to strike surplusage from the indictment and to enjoin prosecution in another county dated February 28, 1966, (the driving under the influence charge in Somerset County); a motion to dismiss the indictment dated February 28, 1966; a motion for disclosure of matters before the Grand Jury dated March 22, 1966; and a motion for advance ruling on alleged admissions or confessions dated March 18, 1966. These motions were seasonably considered, a record was made and they were ruled upon. An appeal was taken by the defendant and twenty-eight points on appeal were reserved by the defendant.

■ Defendant's points on appeal will be stated and considered in order. Several of the points on appeal were not briefed and will be considered to have been waived.

Point No. 1. "The court erred in denying motion of defendant-appellant to dismiss the indictment."

On February 28, 1966, the defendant had moved to dismiss the indictment and the presiding justice after hearing denied his motion. At that time the defendant urged six grounds for dismissal of the indictment, several of which appear to have been abandoned by the defendant. Ground 3 alleged that the indictment did not state facts sufficient to constitute an offense against the State of Maine. Although it does not appear to have been argued by the defendant below, he now urges this Court to hold that the indictment was fatally defective because there was no specific allegation that the death of the victim resulted within one year. The pertinent part of the indictment reads as follows:

"THE GRAND JURY CHARGES: That Melvin F. Warner of St. Albans in the County of Somerset and State of Maine, on the first day of January, A. D.1966, at Waterville in the County of Kennebec and State of Maine, did operate a motor vehicle with reckless disregard for the safety of others and did thereby cause the death of one Emma Charity of Fairfield, in said County of Somerset, in that he, the said Melvin F. Warner, did, on the first day of January, A. D. 1966, operate a motor vehicle, to wit, an automobile, on College Avenue, in Waterville in the County of Kennebec and State of Maine, at an excessive rate of speed in a reckless fashion with regard to the road conditions then existing, to wit, after sunset and before sunrise and fog in the atmosphere, and did then and there fail to keep a proper lookout and did then and there fail to see the person of said Emma Charity who was then and there crossing said College Avenue in said Waterville in a lawful fashion, and he, the said Melvin F. Warner, was then and there under the influence of intoxicating liquor, as a result thereof did strike the said Emma Charity with the said motor vehicle, in a violent and forceful manner, as a result of which accident caused the death of the said Emma Charity."

■ Unquestionably the statute requires that the State allege, as well as prove, that the victim's death resulted within one year from the date of the striking. The defendant was charged with a statutory offense and Rule 7(c) of the Rules of Criminal Procedure provides that:

" * * * The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * *"

While this Rule "is designed to simplify criminal pleading", Section 7.3 Maine

Practice, Glassman, it does not alleviate responsibility for charging every element of the offense, a requirement of long standing.

"When the statute both creates and defines an offense not known to the common law, the * * * indictment must, of course, follow the statute * * *." Section 21, Directions and Forms for Criminal Procedure, Whitehouse and Hill; State v. Munsey, 114 Me. 408, 410, 96 A. 729 (1916); Smith, Petitioner v. State of Maine, 145 Me. 313, 318, 75 A. 2d 538 (1950).

■ Careful criminal pleading would result in the use of a precise allegation of this element of the alleged crime such as the words "and thereby caused the death of Richard Roe within one year" as is suggested in M.R.Crim.P. Form 5, language expressly declared to be sufficient by Rule 58.

It is the right of the defendant, as guaranteed by the Constitution of Maine, Art. 1, Sec. 6, "to demand the nature and cause of the accusation." We have defined the standard of sufficiency of explanation in this manner:

"The test to be applied is whether a respondent of reasonable and normal intelligence, would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof in order to be able to defend and, if convicted, make use of the conviction as a basis of a plea of former jeopardy, should the occasion arise." State v. Charette, 159 Me. 124, 127, 188 A.2d 898, 900 (1963).

■ Applying the standard to this case, would the defendant here be adequately informed that the State was charging that his operation of his vehicle with reckless disregard for the safety of others not only caused the death of Emma Charity but also that her death occurred within one year? As to this latter element of the crime, the indictment, after alleging that the defendant struck the victim with his automobile on January 1, 1966, adds only "as a result of which accident caused the death of the said Emma Charity." The date of Emma Charity's death is not alleged nor is it specifically alleged that her death occurred within one year of January 1, 1966. However, the indictment was returned on February 2, 1966, and bears that date and its language unmistakably informs the defendant that the state charges that on February 2, 1966, Emma Charity was dead, and that she died at some time between the time of the accident and the time of the returning of the indictment, which is obviously less than one year.

This language is an inartistic equivalent of the words "and that her death resulted within one year."

The question had been presented to courts of several other jurisdictions which have held that when an indictment alleges an act which caused death and is returned within the period limited by the statute, it necessarily follows that death occurred within the period, and it adequately informs a defendant as to this essential element of the crime.

"But, in any event, the phraseology criticised is not material, for the information informs the accused that the mortal wounds from which Lottie Brace died were inflicted on the 5th day of November, 1902, and the information is dated on the 8th day of November, 1902, three days after. So that it must necessarily follow that the death occurred within three days from the infliction of the wounds. The information, in all respects, seems to be sufficient to sustain the judgment." State v. Champoux, 33 Wash. 339, 74 P. 557, 559 (1903).

"In the instant case it appears from the record that the indictment was returned within a year and a day of the commission of the assault upon the deceased, and of course it appears from the indictment that at the time of its return he

was then dead; it therefore appears from the record that the assault was perpetrated less than a year and a day before the death of the deceased." Alderson v. State, 196 Ind. 22, 145 N.E. 572, 574 (1924).

For cases reaching the same result see Milburn v. Commonwealth, 223 Ky. 188, 3 S.W.2d 204, 205 (1928); State v. Caviness, 40 Idaho 500, 235 P. 890, 891 (1925); Brassfield v. State, 55 Ark. 556, 18 S.W. 1040, 1041 (1892); People v. Corder, 306 Ill. 264, 137 N.E. 845, 849 (1922).

No other conclusion could result from the reading of the reference indictment by a defendant of reasonable and normal intelligence than that the State was charging that Emma Charity's death had resulted at some point between the date when the state charged he struck her and the date the indictment was returned, only a little more than a month later. If the defendant wished to know the precise date the State claimed she died, he could have included a request for this information in the bill of particulars which he filed. Furthermore, the indictment states the facts alleged with sufficient definiteness to form the basis for a plea of double jeopardy. The indictment is sufficient, in this respect.

Point No. 1—Ground 5.

This Ground urges that the indictment is fatally defective because of vagueness in that it describes the place of the alleged offense only as "on College Avenue in Waterville, in the County of Kennebec and State of Maine."

The defendant relies upon State v. Peterson, 136 Me. 165, 168, 4 A.2d 835 (1939). *Peterson* involved a charge of operating while under the influence and its strict requirement as to allegation of place must be viewed in the light of the uncertainty that existed then as to whether the statute applied only to driving on *public* ways.

The locality of the criminal act is not a part of the offense created by 29 M. R.S.A. § 1315 and is an essential allegation only to show venue. See M.R.Crim.P. Form 5. Allegation and proof that the offense occurred in Waterville, in Kennebec County, satisfied the requirements of venue. M.R.Crim.P., Rule 18.

Point No. 1—Ground 5

Defendant also included as a Ground for dismissal of the indictment an alleged vagueness as to the "manner and circumstances of operation of the automobile" which the state charges constituted driving with a reckless disregard for the safety of others.

In State v. Houde, 150 Me. 469, 114 A.2d 366 (1955) we held that a complaint which charged only that the defendant drove his automobile "in a reckless manner" did not give the defendant adequate notice of the nature of the charge which he is called upon to meet. There we pointed out that a particular manner of operation might be lawful in the daylight and reckless at night, for example. In Carlson v. State, 158 Me. 15, 176 A.2d 844 (1962) we found that an inartistic complaint which charged the defendant with driving "recklessly, to wit, at great excessive speed on said streets; failure to stop at stop signs at No. Main and Birch Streets, also No. Main and Maverick Streets" adequately informed the defendant of the factual nature of the charge and gave sufficient detail to protect him against double jeopardy.

The indictment in the instant case adequately informs the defendant as to the factual nature of this charge. It recites, as explanation of its charge of driving with a reckless disregard for the safety of others that he 1) drove at an excessive rate of speed under nighttime conditions with fog in the atmosphere, 2) that he failed to keep a proper lookout while driving and failed to see the deceased who was crossing the street in a lawful fashion. These details "sufficiently set out the facts which make

the crime". State v. Strout, 132 Me. 134, 136, 167 A. 859 (1933).

The presiding justice acted correctly in denying defendant's motion to dismiss.

■ Point No. 2. "The court erred in denying motions of defendant-appellant for judgment of acquittal."

At the conclusion of the presentation of the evidence by the State, the defendant moved for judgment of acquittal under M. R.Crim.P. Rule 29, on the grounds that the evidence presented by the State was insufficient for the case to go to the jury and to support a verdict of guilty if one should be returned, which motion was denied by the presiding justice. At this point in the trial there had been evidence presented from which the jury could properly have found as follows: At about 2:20 A.M., January 1, 1966, Emma Charity and two friends were crossing College avenue in Waterville, a four lane street, and had nearly reached the curb when Mrs. Charity was struck and killed by an automobile driven by the defendant, which was travelling at a very high rate of speed. The defendant continued on without stopping and was pursued by a Mr. Rediker, a bystander, who followed the defendant one and one-half miles to Fairfield and gave information concerning the incident to Officer Nelson, a Fairfield police officer. Nelson, who had just started to pursue the defendant because of his excessive speed followed the defendant one and one-half miles at the high rate of speed to a point where defendant swung into a driveway. Defendant's driving had been erratic. Nelson walked around defendant's car and observed a large dent on the hood and a larger one just below the windshield. There was a side mirror on the left side but none on the right and there were fresh marks where the right-hand mirror had been. These marks were similar in size and shape to the base of a broken mirror that was later found near Mrs. Charity's body. The appearance, speech and movement of defendant were those of a person who is under the influence of intoxicating liquor and the officer placed him under arrest for operating while under the influence of intoxicating liquor. The officer then removed from the defendant's car three cans and one bottle of beer.

At this point Officer Grenier, a Waterville police officer, arrived and observed the damage to defendant's car and a substance appearing to be blood on the hood and some other substance on the windshield. Grenier warned defendant of his constitutional rights and defendant told the officer he had just driven out College Avenue and that at one point he had seen something black in the air.

The mirror found in the street was similar to the one remaining on defendant's car and to the one which a Mr. Lawrence had installed upon the right-hand side of defendant's car when he sold the car to defendant ten days before. At that time there were no dents such as the officers observed on defendant's hood and cowl.

The evidence heard by the jury at the time of defendant's motion was sufficient to sustain defendant's conviction. There was no error.

■ Point No. 3. "The court erred in instructing the jury in the respects to which defendant-appellant took exception. * * *"

M.R.Crim.P.Rule 30(b) provides:

"* * * No party shall assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

Defendant's counsel failed to comply with this provision in that no grounds for his objection were stated.

We have, however, examined the objections and we are satisfied that the defendant was in no way prejudiced by the five

parts of the charge to which he objected. The objections concerned passages of language which were but fragments of what the record shows to have been fair and complete explanations of the issues involved. The correctness of a charge must be determined from the entire charge and not from isolated parts. State v. Berube, 158 Me. 433, 438, 185 A.2d 900, 904 (1962).

Point. No. 4. The defendant requested some 16 instructions which the presiding justice refused to give. The following requested instructions were argued and the others are considered waived.

 Requested instruction No. 10:

"10. The State has the burden of proving beyond a reasonable doubt that the death of Emma Charity was not accidental, that it was not due to natural causes, and that it was not due to the act of the deceased herself. You may not find the defendant criminally responsible for the death if you have a reasonable doubt as to whether the death was accidental, due to natural causes, or due to the act of the deceased herself."

The presiding justice did not give the requested instruction. He fully and correctly instructed the jury on the state's burden of proof of "every necessary element" of the charge against the defendant beyond a reasonable doubt. He cautioned them that they could not "speculate or surmise or guess". He read to the jury the statutory definition of the crime of reckless homicide with its clear language "and thereby causes the death of another". He prefaced his explanation of the offense charged with the simple, brief and clear explanation:

"You must determine that this defendant caused that death, otherwise you would end your deliberations there."

In addition he referred to the element of "causing the death of another" on twelve later instances in his charge. The presiding justice is not bound to repeat, at request, anything which was substantially and properly covered in the charge given, nor is he bound to adopt the particular language used in the requested instruction, if the jury had otherwise been properly instructed in accordance with law. State v. Cox, 138 Me. 151, 169, 23 A.2d 634 (1941); State v. McKrackern, 141 Me. 194, 212, 41 A.2d 817 (1945).

 Requested instructions Nos. 11, 11A, 11B and 11C:

"You may not find defendant guilty merely because you may find that he drove at the time and place alleged with reckless disregard for the safety of others. If you so find, he is not guilty unless you find that such conduct on his part was the proximate cause of the death of Emma Charity. Proximate cause means

"A. That defendant's reckless conduct was the sole cause of the death of Emma Charity; that is, if any other cause such as Emma Charity's own negligence at all contributed to bringing about her death, then the defendant must be found not guilty; or if this request A is denied, defendant requests the following in its place:

"B. That defendant's reckless conduct contributed more to causing Emma Charity's death than any other cause such as her own carelessness; or if this request B is denied, defendant requests the following in its place:

"C. That defendant's reckless conduct contributed so substantially to Emma Charity's death that he should be held criminally responsible for it; * * *"

The presiding justice was not in error in refusing the requested instructions. It is true that inasmuch as the unlawful acts which the State charges constitute driving with reckless disregard were acts which are malum prohibitum, therefore the acts charged must be proved to have been a proximate cause of the death. State v.

Budge, 126 Me. 223, 137 A. 244, 53 A.L.R. 241 (1927); State v. Hamilton, 149 Me. 218, 239, 100 A.2d 234 (1953). The reckless conduct need not to have been the sole cause of the victim's death nor must it contribute more than any other cause. The language used by the presiding justice in instructing the jury on causation was a clear and adequate explanation. While the justice did not use the term "proximate cause", he scrupulously defined the State's burden of proof as to causation correctly and in words which have long been considered an acceptable definition of proximate cause. Hatch v. Globe Laundry Co., 132 Me. 379, 171 A. 387 (1934); Thompson v. Frankus, 151 Me. 54, 59, 115 A.2d 718 (1955).

 Requested Instruction No. 11, C. 3:

"If you find that he (Melvin Warner) was intoxicated at the time of these alleged statements, you must find them involuntary and you must not consider them at all against Mr. Warner. If you find that at the time of the alleged statements Mr. Warner was under the influence of intoxicating liquor, you also must disregard them and not at all consider them against him."

The court correctly refused this request. The preliminary determination of an intelligent waiver of his right to counsel and to silence which the *Escobedo* rule, then controlling, required the court to make necessarily included a consideration of the defendant's condition as to the effects of alcohol. When the court submitted the question of the admissions to the jury it became that body's duty to determine whether the alleged admissions were made, whether they were made voluntarily and the weight to be given them.

 The great majority of the jurisdictions which have considered this issue have held that proof that the accused was intoxicated at the time he made the admission will not, without more, bar the reception of the admission into evidence. But if it is shown that the accused was intoxicated to the degree of mania, or of being unable to understand the meaning of his statement, then the statement is inadmissible. The effect of alcohol upon the accused goes to the weight and credibility to be accorded the admission by the jury. People v. MacCagnan, 129 Cal.App.2d 100, 276 P.2d 679 (1954); Commonwealth v. Howe, 75 Mass. 110 (1857); Roper v. People, 116 Colo. 493, 179 P.2d 232 (1947); Eiffe v. State, 226 Ind. 57, 77 N.E.2d 750 (1948); State v. Thresher (Mo.) 350 S.W. 2d 1 (1961); State v. Smith (Mo.) 342 S. W.2d 940, 941 (1961); Lindsey v. State, 66 Fla. 341, 63 So. 832, 50 L.R.A.,N.S., 1077 (1914); Bell v. United States, 60 App.D.C. 76, 47 F.2d 438, 74 A.L.R. 1098 (1931) 29 Am.Jur.2d Evidence Sec. 577; 23 C.J.S. Criminal Law § 828; Anno. 69 A.L.R.2d 358, 362.

The majority rule appears to us to be in accord with our own standards of voluntariness of admissions.

Point No. 7. "The court erred in denying defendant-appellant's motion to suppress evidence and the fruits thereof suffered by an unconstitutional and illegal search and seizure and in admitting such evidence and fruits into evidence at the trial."

The evidence complained of under this Point may be divided into two groups, (1) evidence as to dents, markings and foreign substances gained by the state by examination of the car in the dooryard in Fairfield, and (2) evidence gained from examination of the car at Arbo's garage in Waterville.

 The defendant now contends the observation of the defendant's car in the driveway by these two officers was an unconstitutional search and seizure. The acts of the officers in examining the outside of the defendant's car in the Fairfield driveway were unobjectionable and violated

none of his constitutional rights. No search or seizure was involved.

"To observe that which is open to view is not generally considered a 'search'." Miller v. United States, 356 F.2d 63, 68 (5th Cir.1966). See also People v. Davis, 188 Cal.App.2d 718, 10 Cal.Rptr. 610 (1961); United States v. McDaniel, 154 F.Supp. 1, 2 (D.C.C.1957), aff'd, 103 U.S.App.D.C. 144, 255 F.2d 896, cert. denied, 358 U.S. 853, 79 S.Ct. 82, 3 L.Ed.2d 87; Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953); Harris v. United States, 125 U.S.App.D.C. 231, 370 F.2d 477 (1966); Nunez v. United States, 370 F.2d 538 (5th Cir.1967); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); United States v. Paradise, 334 F.2d 748, 750 (C.A.3, 1964).

After Officer Nelson placed the defendant under arrest for operating while under the influence, he went back to the defendant's car and on examining it found three cans and one bottle of beer on the back seat of the defendant's car and several beer bottle caps on the floor in front. Although neither the beer itself nor the bottle caps were offered in evidence, Officer Nelson testified concerning their presence there. As to the finding of the beer and caps there was a search involved. The Fourth Amendment to the United States Constitution and Art. I, Sec. 5, of the Constitution of Maine forbid only *unreasonable* searches and seizures.

"The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." Schmerber v. State of California, 384 U.S. 757, 767, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966).

█ Search and seizure incident to a lawful arrest has long been recognized as an integral part of law enforcement procedures by the United States Supreme Court as well as the courts of the various states. Harris v. United States, 331 U.S. 145, 154,

67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Although the presiding justice did not specifically find as a fact that Officer Nelson had probable cause to arrest the defendant for operating while under the influence and that he did thus arrest the defendant, such findings are necessarily implicit in his overruling of the defendant's objections to the reference question. The testimony abundantly supports the State's contention that the defendant was lawfully arrested by Officer Nelson upon probable cause and that the search was incident to that arrest. We will explain our conclusion that probable cause existed for Officer Nelson's arrest of the defendant in our consideration of defendant's Point No. 24.

The defendant contends that even if Officer Nelson was making a lawful arrest (which defendant does not concede), the beer and beer caps were "merely evidentiary materials" and not subject to seizure and that testimony as to their presence in the defendant's car should have been excluded under the "fruit from the poisoned tree" doctrine. Silverthorne Lumber Company v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

The practice of examining the interior of an automobile in search of intoxicating liquor by an officer who has made a lawful arrest of the driver for operating while under the influence is one that has long prevailed here. The practice of admitting into evidence liquor bottles, empty or full, which were found in the vehicle, or testimony concerning them, has long been followed in our trial courts. A logical relation exists between the possession of liquor and the condition of the driver as to sobriety which may be of considerable or very minimal probative value as the circumstances vary. The probative value of an unopened can of beer is doubtless less than that of a half consumed can but the jury may decide what weight, if any, should be given to it when examined with the other facts of the case.

This is the first time this court has been required to examine the propriety of admission of such evidence and we do it in the light of a constitutional interpretation by the United States Supreme Court involving a distinction which we have never adopted, which briefly became binding upon us and which has since been abandoned.

In 1921, the United States Supreme Court in Gouled v. United States, 255 U.S. 298, 309, 41 S.Ct. 261, 65 L.Ed. 647, 652 (1921), distinguished between the seizure of, on the one hand, the instrumentalities of the crime, the fruits of the crime, contraband and weapons by which an escape might be effected and on the other hand a type of objects which they described as merely evidentiary materials. The former could lawfully be the subject of search and seizure—the latter could not. (In passing we should mention that this briefly held distinction was never applied to searches of the person incident to an arrest). Although the courts of this state had never recognized this distinction, the "mere evidence" rule became binding upon us in 1961 when the United States Supreme Court's decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) made federal exclusionary rules applicable to state court trials. The "mere evidence" rule became the subject of much criticism by courts and commentators and on May 29, 1967, that Court, after again examining the rationale for the rule and its history, rejected the distinction as "wholly irrational" and "attributable more to chance than considered judgment". Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Although this present defendant's conviction in the superior court occurred before the decision in *Hayden,* the conclusion of the court in *Hayden* that the Fourth Amendment does not support any distinction as to mere evidentiary materials removes any basis for the present defendant's objection. The United States Supreme Court has in substance stated that the Fourth Amendment has never forbidden reasonable seizures of mere evidentiary materials of a non-testimonial nature and that decisions so holding were applying an erroneous rule.

Our own determination as to this Point on Appeal would be the same if the United States Supreme Court's decision in *Hayden* had not been announced. In our opinion the materials here seized and as to which testimony was presented over defendant's objection fall within the classification of "the instrumentalities and means by which a crime is committed". Harris v. United States, supra. The offense here charged includes the element that the defendant was under the influence of intoxicating liquor while driving a car and intoxicating liquor is the means by which this prohibited condition results. Liquor itself is not "mere evidence" as, for example, a check with which a defendant may have purchased such liquor might be. A jury might properly conclude that empty beer cans or bottle tops were some evidence from which they should infer drinking on the part of a defendant and that the presence of certain quantities of unopened containers, along with the presence of empty containers or bottle caps, was evidence from which, along with other evidence in the case, they should infer that the drinking was recent and continuing rather than remote. The jury might find that such evidence, viewed with other evidence in the case, had reasonable probative value as to the guilt of defendant or the jury might reject it as unconvincing.

For case holding that objects seized were the means by which the crime was committed, see Kneeland v. Connally, 70 Ga. 424 (1883) (faro and roulette tables seized on a charge of conducting a gambling room); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927) (a ledger containing entries of liquor purchased, receipts, expenses, bribes, etc. as part of the equipment actually used to commit the offense on a charge of violating the National Prohibition Act); United States v. Guido,

251 F.2d 1 (7th Cir.1958), cert. den. 356 U.S. 950, 78 S.Ct. 915, 2 L.Ed.2d 843 (the shoes worn by the defendant held on a charge of bank robbery). The admission of this evidence was correct.

The second class of evidence to which the defendant refers is that resulting from an examination of the defendant's vehicle by police officers while the car was in Arbo's garage. Prior to trial defendant moved to suppress any evidence gained by the police during such examinations of the car and the presiding justice conducted a hearing on this motion before the jury was impanelled and testimony at this hearing showed that the defendant's vehicle was towed by the wrecker to Arbo's garage, where it remained some three days. During this time there was no search of the interior of the car but the Waterville police examined its exterior surface, photographed it, and took from its hood hair and other substances which were subjected to laboratory examination. The defendant moved that the witness' observations and the reports of such laboratory tests should be suppressed because the car was allegedly illegally held. The presiding justice did not rule at once on this motion and, after an off-the-record conference, the State elected not to offer the evidence complained of with the exception of the photographs which the justice excluded at the trial.

The defendant contends that two references during the trial to knowledge gained by the police during that examination of the car in Arbo's garage were prejudicial to him under the "fruit from the poisoned tree" doctrine, arguing that the car was illegally held and that the results of any examination of it there would be tainted. Silverthorne Lumber Company v. United States, supra; Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962).

One of these instances concerned the rebuttal testimony of Officer Nelson who, after having testified generally concerning the sizes and shapes of the dents on the front of defendant's car, returned in rebuttal to contradict a defense witness and gave more specific estimates of measurements in inches. In the meantime he had seen the photographs that the justice had excluded.

The presiding justice excused the jury and conducted a hearing during which counsel for the defendant examined the witness as to the source of his knowledge. He found that the witness' description of the measurement of the dents was based on a recollection of his examination of the defendant's car in the driveway in Fairfield which recollection was independent of any knowledge he may have gained by looking at the photographs at recess. He denied the defendant's motion to strike that part of the witness' testimony. He had had the opportunity to observe the witness through a long direct and cross-examination in the motion to suppress and in the trial itself and was able to evaluate the witness' demeanor. His denial of defendant's motion to strike is supported by the record. Merely seeing the pictures does not seal the lips of the officer as to his earlier observations. We hold that the connection of the photographs with the testimony of the witness is too attenuated to taint it.

The other instance concerns Officer MacArthur's testimony regarding the mirror which he had found in the street near Mrs. Charity's body. The officer testified:

"I kept it for evidence and I later matched it up with—" At this point he was interrupted. Later, on cross-examination, defendant's counsel was attacking the officer's testimony concerning the manner of the officer's preservation of the exhibit and the record shows this question and answer:

"Q. You didn't have this mirror in your locker at all times since you went

from the scene of the accident until now did you?

A. I brought it down here and I took it over to Arbo's Garage. This mirror never left my possession."

The defendant moved for a mistrial based upon Officer MacArthur's testimony concerning matching up the mirror and his reference to Arbo's garage. Such a motion is addressed to the sound discretion of the presiding justice whose responsibility it is to safeguard the rights of both the defendant and the State. It is generally said that if the jury's ability to render an impartial verdict may have been affected, it is the judge's duty to grant a motion for a mistrial. State v. Slorah, 118 Me. 203, 106 A. 768, 4 A.L.R. 1256 (1919); State v. Sanborn, 157 Me. 424, 173 A.2d 854 (1961); State v. Hamilton, supra.; United States v. Perez, 9 Wheat. 579, 6 L. Ed. 165 (1824). The justice's decision will not be overruled unless manifest wrong or injury has resulted. State v. Cox, supra.

The rule contemplates that there must be more than a theoretical danger of prejudice, however, and the examination of a witness cannot be expected to proceed under the completely antiseptic conditions of a hospital operating room. We find no real danger of prejudice. The officer's statement that he "matched it up", interrupted as it was at that point, was harmless. The jury had not been told with what he had matched it—perhaps with the gasket which he had also found—or whether the results of the matching were positive or negative. We see no prejudice to the defendant from the reference to Arbo's garage. Doubtless reasoning and intelligent men and women of the jury would expect police officers to attempt to compare the mirror found in the street with the one remaining on the defendant's car or with the marks on the side where one had been. The fact that they were not told by the State's witnesses that such a test had been made with results favorable

to the State's position must have been interpreted by them as indicating the results were not favorable to the State's position.

We find no abuse of his discretion.

This situation contained an additional element which is worthy of comment. The State was apparently avoiding reference to the officer's trip to Arbo's garage. The defendant's counsel himself, in an attempt to cast doubt upon the manner in which the exhibit had been preserved, brought out that the officer had taken the exhibit to the garage. He undertook to ask the question quoted above although he knew that the mirror had been taken out for comparison with the mirror on defendant's car which defendant argued was illegally held at Arbo's garage, as is shown by the transcript on the hearing to suppress. Under such conditions the presiding justice may sometimes properly find that the asking of such a question is a calculated risk and that the questioner cannot successfully complain of being hurt by the answer he receives.

In any event, we do not find any violation of defendant's constitutional rights by the officer's examination of and photographing the outside of defendant's car at Arbo's garage. Police officers, charged with the responsibility of investigating the felonious death of Mrs. Charity, finding near the scene an automobile which they had reasonable cause to believe to have been the instrumentality of the crime, had not only the authority but the duty to hold the car for reasonable examination. No invasion of privacy—the evil which the constitutional prohibition against unreasonable searches and seizures opposes—was involved in inspection of its exterior. There was no search—only the examination of what was open and visible. Cotton v. United States, 371 F.2d 385 (9th Cir. 1967).

The fact that the defendant was under arrest by a Fairfield officer who had a responsibility for safeguarding the

car in no way prohibited the neighboring Waterville officers from taking the car across the county line for their own lawful examination. The public has the right to expect such cooperation among its law enforcement officers.

Point No. 8. "The court erred in denying defendant-appellant's motion for a mistrial and renewed motion therefor on the ground that the State informed the jury that defendant-appellant had been arrested for a crime for which he had not been convicted."

The defendant refers here to knowledge which the jury may have received that Officer Nelson had arrested the defendant for operating a motor vehicle while under the influence of intoxicating liquor after having come upon him in the driveway in Fairfield. An examination of the record discloses that the reference to the driving under the influence charge came from the defendant himself.

 The justice refused to strike this testimony and, later, to order a mistrial. We see no way in which defendant was prejudiced. The jury knew of defendant's condition as to the use of intoxicating liquor when he stopped in Fairfield and while they had not been told that Officer Nelson had arrested defendant in Fairfield for operating while under the influence, there appears to be no reason why they should not have been told this. Evidence of other offenses committed by a defendant is not inadmissible in his current trial when such evidence is an element of the offense with which he is charged or when such evidence itself proves the commission of the offense charged. Bunten v. Davis, 82 N.H. 304, 133 A. 16, 45 A.L.R. 1409 (1926); People v. Thaw, 219 N.Y. 39, 113 N.E. 556, 3 A. L.R. 1537 (1916); Anno. 170 A.L.R. 306.

We find no abuse of the justice's discretion.

Point No. 10. "The court erred in admitting into evidence alleged admissions and confessions in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and to the Maine Constitution."

 There has been no requirement in this State, either by statute or by judicial decision, that the accused must receive a warning that his admission may be used against him or that he be informed he may remain silent and consult with counsel. Our court has many times held that the test to be applied to the admission of testimony covering alleged confessions or admissions is the determination of whether it was or was not given voluntarily. State v. Grover, 96 Me. 363, 52 A. 757 (1902); State v. Priest, 117 Me. 223, 103 A. 359 (1918); State v. Merrow, 161 Me. 111, 208 A.2d 659 (1965).

The decision of the United States Supreme Court in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) made the federal standard for admissibility of confessions controlling in State criminal prosecutions.

These events and the trial of this case took place before the rule of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was established. The only specific requirements as to warnings and explanations as to silence and counsel prerequisite to the admission of defendant's statements were those established by the United States Supreme Court soon after *Malloy* in its decision in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The court there added further qualifications on the voluntary-involuntary test—those of the right of the accused to the assistance of counsel and of warning of right to remain silent under certain circumstances.

*Escobedo* is regarded as a landmark case establishing the right of a person suspected of crime to have the benefit of counsel's advice and protection before interrogation by law enforcement officers.

 The standards set for compliance by law enforcement officers by *Esco-*

*bedo* required that the defendant should have been warned of his absolute right to remain silent and his right to consult with his counsel if he wished—otherwise no statement made by him as a result of interrogation may be used against him at trial. The justice here, in addition to his responsibility of preliminarily determining the voluntariness of the defendant's statements, had the duty of determining that the defendant had been made aware of his right to remain silent and of his right to presence of counsel and that he made an understanding waiver of those rights. The justice heard the testimony of several witnesses that they had warned defendant of his right to remain silent and of his right to counsel.

■■■ The justice heard the testimony of the defendant on the motion before he made his finding of voluntariness. The defendant himself testified at the hearing that he was perfectly aware of everything that was going on at the Waterville Police Station. He answered that he talked with the officers voluntarily, that they said a woman had been hit and so he "wanted to go down and clear it up." He added "Well, I figured I had to anyway * * *" and that "they have control of it." He said the officers in Fairfield asked him if he wanted a blood test and a lawyer and he said no to both.

> "* * * When the police officers asked me if I wanted a blood test or a lawyer I took it to be for this woman who got hit, but I didn't hit no woman, so I didn't figure I needed a lawyer."

Defendant said the county attorney also told him of his right to have a lawyer. The defendant said he was "feeling all right" at the police station except for being tense and nervous. He said he was in the police station two hours and ten minutes, during part of which time he "dozed off", but Capt. Drost said the questioning lasted thirty or forty minutes with a short break and then a much shorter period. These facts are far removed from

those of *Escobedo*. The justice had opportunity to observe the witnesses and to evaluate their credibility. His finding that defendant was informed of his rights to counsel and to remain silent find abundant support in the evidence. No particular formula for such findings is necessary, and implicit in the justice's action was a finding that the defendant's waiver was a knowing and intelligent one. The defendant's own testimony established his understanding of his predicament, his right to remain silent and his right to counsel's assistance and that he understandingly waived them.

The evidence abundantly supports the justice's finding that the requirements of *Escobedo* had been met.

■■■ Point No. 11. "The court erred in refusing to admit into evidence the testimony of Lloyd Hubbard."

The defendant's contention that the presiding justice erred in not admitting the testimony of the defendant's employer as to the defendant's driving habits is the basis for this point on appeal. During an offer of proof in the absence of the jury Mr. Hubbard, the Plant Superintendent of the Telephone Company which had employed the defendant about one year, testified "Anytime I have observed him, which has been often, his manner of driving has been careful."

The general rule of evidence is that the prior habits, acts or reputation for care of a defendant are not admissible for the purpose of attempting to prove what his conduct might have been on a specific occasion. Poole v. Evergreen Livestock Co., 262 Ala. 131, 77 So.2d 475 (1955); State v. Goetz, 83 Conn. 437, 76 A. 1000, 30 L.R.A., N.S., 458 (1910); Noonan v. Luther, 206 N.Y. 105, 99 N.E. 178, 41 L.R.A.,N.S., 761 (1912); 29 Am.Jur.2d Evidence §§ 303, 316; 65A C.J.S. Negligence § 237(2). We see no probative value in the testimony of a witness who had apparently observed the defendant driving in the course of his em-

ployment in determining his manner of driving on a specific occasion later than 2 A.M. after a New Year's party during which the defendant had consumed intoxicating liquor.

Point No. 12. "The court erred in refusing to admit into evidence the testimony of Chester Nason."

The defendant offered a Mr. Nason as an expert witness and Mr. Nason stated that he had an opinion as to whether the mirror, State's Exhibit 6, could have been removed by application of sudden force, including striking the body of a heavy woman, and whether certain specific dents and damages would have been caused to a vehicle such as defendant's if it had slid in a certain particular manner into a curbing and guardrail such as that described as existing in Palmyra.

■ It has long been a rule in this State that an appellant must show not only that a technically admissible question was excluded but also that the answer, if admitted, would have been favorable to the appellant. As the record does not show what the witness' answer would have been we do not know whether the defendant was or was not prejudiced by the ruling of the justice and we cannot substitute conjecture. State v. Rist, 130 Me. 163, 166, 154 A. 178 (1931); State v. Dow, 122 Me. 448, 120 A. 427 (1923); State v. Wombolt, 126 Me. 351, 138 A. 527 (1927); Glassman, Maine Practice, Sec. 26:16; Beauregard v. Benjamin F. Smith Co., 213 Mass. 259, 100 N.E. 627, 45 L.R.A.,N.S., 200 (1913); Cook v. Enterprise Transportation Co., 197 Mass. 7, 10, 83 N.E. 325 (1907).

■ In any event we find no error on the part of the presiding justice in ruling that the witness' qualifications to answer these questions had not been proved.

The witness was a body shop foreman who had testified in court numerous times as an expert on the cost of repairs to motor vehicles damaged in accidents. He agreed, however, in answer to a question from defendant's counsel that he had never testified in court "about what forces of impact have what results on a certain automobile."

"Whether a witness called as an expert possesses the requisite qualifications to enable him to testify, is a preliminary question to be decided by the court. That decision must be final and conclusive, unless it is made clearly to appear from the evidence that it was not justified, or that it was based upon some error in law." Marston v. Dingley, 88 Me. 546, 34 A. 414 (1896); State v. Libby, 153 Me. 1, 8, 133 A.2d 877 (1957); State v. Wardwell, 158 Me. 307, 183 A.2d 896 (1962).

The witness was qualified in the field of repairing and estimating the cost of repairing motor vehicles. However, here the excluded questions called for answers involving the expected results of the application of certain forces in certain manners. It had not been demonstrated that he possessed a training or experience in that area of the principles of physics which would qualify him to answer.

■ Point No. 13. "The court erred in refusing to admit into evidence parts of the deposition of Sadie Kanaris."

Some time after Mrs. Charity's death a complaint issued in District Court No. 12 in Somerset County charging this defendant with operating a motor vehicle while under the influence of intoxicating liquor in Fairfield at the time he was apprehended there by Officer Nelson. The judge of that court ordered Mrs. Kanaris' deposition taken in that Somerset County case.

There was no error by the justice in refusing to admit into evidence in a reckless homicide trial in Kennebec County parts of Mrs. Kanaris' deposition taken in a driving under the influence trial in Somerset County. M.R.Crim.P. Rule 15 authorizes the use of a deposition in substitution for

the personal appearance of a witness only in a trial of the action relative to which it was ordered taken.

■ Point No. 19. "The court erred in failing to order the jury not to read or listen to accounts of the trial in news media."

At the close of the third day of the trial the defendant's counsel addressed the court:

"MR. LEVINE: Your Honor, would it be appropriate for the jury to be asked not to read any stories or listen to any reports of this trial?"

The justice responded in this manner:

"THE COURT: I have cautioned them in that vein, Mr. Levine. You understand there may be news reports and I again only suggest and direct you not to read it. There may be just excerpts from the testimony to cause you to think one way or another concerning that testimony, so keep yourselves free of any reading of it as well as anything else. We will adjourn until tomorrow morning at 9:30."

We are satisfied that the language above quoted was understood by the jury as an instruction to refrain from exposing themselves to the possible influence of news reports.

We find no error.

■ Point No. 20. "The court erred in admitting into evidence irrelevant matters which prejudice defendant-appellant."

An examination of the record discloses that testimony of the defendant and his witnesses had made the questions complained of substantially relevant to the issue. Their testimony as to the innocuous nature of defendant's activities during the day and evening in question entitled the State to explore within reasonable limits the circumstances surrounding each of the visits defendant had made. We find no error.

■ Point No. 22. "The court erred in admitting into evidence State's Exhibit #8."

Defendant had contended that certain dents on his car were caused by his car previously hitting a 32 inch high curb and metal guy wire shield in Hartland. In rebuttal the State introduced testimony to dispute the height of this curb and State's Exhibit #8 was admitted over defendant's objections. It purports to be a close-up view of the curb and wire shield and it shows what appears to be a yardstick being held by a person beside the shield. The defendant contends that the State should have been required to present proof of the accuracy of the measurement shown on the yardstick. Here the presiding justice heard the article in the picture described as "a 36 inch yardstick" by the witness who took the photograph. The rule of practice is firmly established here as elsewhere that the admission or exclusion of photographs is within the discretion of the court, not to be disturbed on exceptions unless abused. State v. Bobb, 138 Me. 242, 25 A.2d 229 (1942); State v. Duguay, 158 Me. 61, 178 A.2d 129 (1962); Public Utilities Commission v. Cole's Express, 153 Me. 487, 493, 138 A.2d 466, 469 (1958).

There was no abuse of discretion in admitting the photograph.

■ Point No. 23. "The court erred in admitting into evidence hearsay and prior inconsistent statements without first asking the witness whether the witness previously made such a statement."

In his brief the defendant complains of the subjects as to which the witness testified in direct and cross-examination and as to which the state sought to contradict her through rebuttal testimony of Capt. Drost.

Examination of the trial transcript convinces us that the county attorney in fact followed the exact procedure which defendant's Point on Appeal suggests he should have followed, and that there was

no error here on the part of the presiding justice.

It is a well recognized exception to the hearsay rule that when a witness has testified to material facts, any acts or declarations of his, appearing inconsistent, are competent impeachment. Audibert v. Michaud, 119 Me. 295, 111 A. 305 (1920); Mitchell v. Mitchell, 136 Me. 406, 11 A.2d 898 (1940); State v. Mosley, 133 Me. 168, 175 A. 307 (1934); State v. Hume, 146 Me. 129, 142, 78 A.2d 496 (1951).

Point No. 24. "The court erred in admitting into evidence the fruits of unconstitutional and illegal arrests."

Officer Nelson testified that he placed the defendant under arrest for driving while under the influence in front of the dooryard in Fairfield. Following the arrest he and other officers made certain observations of the defendant and his vehicle and had conversations with him which were admitted into evidence. The defendant contends that this arrest was unlawful. It was a lawful arrest if the officer had probable cause for the arrest. "Probable cause" is synonymous with "reasonable grounds". State v. MacKenzie, 161 Me. 123, 210 A.2d 24 (1965). Probable cause has been defined as the evidence required to persuade a man of reasonable caution to believe that a crime is being committed or that it has been committed. Carroll v. United States, 267 U.S. 132, 162, 69 L.Ed. 543, 552, 45 S.Ct. 280, 39 A.L.R. 790 (1925); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Less proof is required than to establish guilt and hearsay may be considered on the issue of probable cause. Draper v. United States, 358 U.S. 307, 311–313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

"In dealing with probable cause * * * as the very name implies we deal with probabilities. These are not technical; they are the factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

Review of the testimony summarized earlier reveals that there was ample evidence to constitute probable cause for Officer Nelson's arrest of the defendant.

Point No. 28. "The court erred in admitting into evidence hearsay statements made in the presence of defendant in violation of the defendant's constitutional rights against self-incrimination by his silence and in violation of the hearsay rule."

While the defendant was under arrest in Officer Nelson's police cruiser in Fairfield, Officer Grenier of the Waterville Police Department, who was investigating an early radio report that a woman had been hit by a car in Waterville, talked with the defendant. The officer related their conversation saying in part:

[Officer Grenier]. "He said yes, he had just came (sic) through Waterville. I then asked him if he knew he was involved in an accident,—

MR. LEVINE: I object your Honor on the same ground.

THE COURT: Overruled.

A. And he put his head down. I then —well, from there we received word—"

A short time later in his testimony the following occurred:

"THE WITNESS: I then told Mr. Warner that this could be very serious and he shook his head yes.

MR. LEVINE: I move to strike both the hearsay what the officer earlier said and the defendant's reaction your Honor on the grounds of admission by defendant stated before.

THE COURT: Overruled."

The ground for objection was apparently the ground earlier advanced that testimony at the preliminary hearing showed the

statements to have been involuntary. The court correctly overruled counsel's objections to any statement by the accused, for reasons which we discuss elsewhere in this opinion.

We must now consider the effect and significance of the answer "And he put his head down." Defendant argues that as the constitution assures the defendant's right to refuse to make statements relating to the crime of which he is accused, so it also protects him from the prejudice which might result if the jury is told that he remained silent in the face of accusation. We are aware of the considerable body of decisions supporting defendant's position on the law here. Commonwealth v. Dravecz, 424 Pa. 582, 227 A.2d 904 (1967) 29 Am.Jur.2d Sec. 525; Developments in the Law—Confessions; 79 Harv.L.Rev. 938, 1036 (1966). But we do not reach the question of acceptance of that rule of law here nor the issue of whether the officer's words "And he put his head down" do or do not amount to a statement that the defendant remained silent in the face of accusation, for two reasons.

The defendant, if he deemed himself prejudiced by the officer's answer, could have moved to strike that part of the answer and for appropriate instructions to the jury. He chose not to do so. The questioning continued until the officer testified "I then told Mr. Warner that this could be very serious and he shook his head yes."

■ At this point, defendant's counsel said:

"I move to strike both the hearsay what the officer earlier said and the defendant's reaction your Honor on the grounds of admission by defendant stated before."

The language used by counsel was highly ambiguous. Did counsel refer to the officer's statement last above quoted and the defendant's reaction of shaking his head

yes—or did he, as defendant apparently now contends, refer to the testimony concerning the defendant putting his head down? The answer is by no means clear to us from a study of the record. The presiding justice cannot be expected to rule upon past testimony unless the motion to strike clearly identifies the portion of testimony to which counsel has reference. Glassman, Maine Practice, 512; McKown v. Powers, 86 Me. 291, 294–295, 29 A. 1079, 1081 (1894); Stevens v. William S. Howe Co., 275 Mass. 398, 176 N.E. 208 (1931). We cannot say that the presiding justice was clearly informed as to which answer counsel referred in his motion to strike.

■ The effect of the words "and he put his head down" was not prejudicial in any event. Immediately following the excerpts of testimony quoted above, the record shows that the officer asked the defendant further questions concerning his activities of the evening and the defendant answered his questions. The defendant had the right to remain silent. Instead, he chose to answer the officer's questions. He cannot complain that reference to his brief silence is prejudicial when, following this silence, he proceeded to answer the officer's questions voluntarily. There was no infringement of defendant's constitutional rights. Neither is any violation of the hearsay rule apparent to us.

Appeal denied.

MARDEN, Justice (dissenting).

Respectfully I must disagree with the majority opinion on the first point of appeal. Granting that Rule 7(c) Maine Rules of Crim.Proc. "is designed to simplify criminal pleading * * *. Of course, every element of the offense must be charged in the indictment." Section 7.3 Maine Practice, Glassman.

"When the statute both creates and defines an offense not known to the common law, the * * * indictment must, of course, follow the statute * * *."

Section 21, Directions and Forms for Criminal Procedure, Whitehouse and Hill; State v. Munsey, 114 Me. 408, 410, 96 A. 729; and Smith, Petitioner v. State of Maine, 145 Me. 313, 318, 75 A. 2d 538.

The offense of reckless homicide caused by the operation of a vehicle with reckless disregard for the safety of others and thereby causing the death of another person prescribes that such death must be *within one year*. If the victim of the accident should survive the experience by a year and a day, the statute would not apply. The allegation of the death of the victim within one year from the date of the collision is an essential fact constituting the offense. The omission to charge this fact is a fatal defect in the indictment and the conviction should be reversed. I would not reach the other points of appeal.